**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 30 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ALBUQUERQUE CHEMICAL
COMPANY, INC.,

    Plaintiff-Appellant,

v.

ARNESON PRODUCTS, INC.;
RONALD DALE BROWN; LISA
CALLAWAY BROWN,

    Defendants-Appellees.

No. 98-2336

(D.C. No. CIV-98-423-SC)
(D.N.M.)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, **HOLLOWAY**, and **BRISCOE,** Circuit Judges.

---

Albuquerque Chemical Company, Inc. (Albuquerque Chemical), appeals from a

district court order affirming the bankruptcy court's decision to allow debtors Ronald D.

Brown and Lisa C. Brown (the Browns) to reopen their Chapter 7 bankruptcy case and

avoid a lien held by Albuquerque Chemical against their residence. We exercise

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

1

jurisdiction pursuant to 28 U.S.C. § 1291 and affirm in part and reverse in part.

I.

On February 3, 1986, the Browns, who were engaged in the business of building swimming pools, filed a Chapter 7 bankruptcy proceeding. According to schedules filed with their bankruptcy petition, the Browns had first and second mortgages, in the amounts of $20,000 and $50,000 respectively, on their home. The Browns listed the fair market value of their home at $85,000, and their equity at $15,000. Mr. Brown claimed a homestead exemption in the amount of $20,000; Mrs. Brown, in lieu of her homestead exemption, selected an exemption for office furniture in the amount of $2,000. Among their listed debts, the Browns noted they owed approximately $10,000 to Albuquerque Chemical for business debt. The case trustee filed a no-distribution report on October 27, 1986. The bankruptcy court subsequently granted the Browns a discharge from debt on November 28, 1986, and closed the case.

In June 1997, the Browns attempted to refinance their house. At the time of the loan closing, however, they discovered there were outstanding judgment liens on the house, including a 1985 lien in the amount of $14,660.50 from Albuquerque Chemical. The Browns obtained counsel and, on August 21, 1997, filed a motion to reopen their Chapter 7 bankruptcy case in order to avoid the outstanding liens. Albuquerque Chemical filed an objection to the motion to reopen. The bankruptcy court overruled Albuquerque Chemical's objection and granted the Browns' motion to reopen the case.

2

The Browns subsequently moved to avoid the lien held by Albuquerque Chemical against their residence. Albuquerque Chemical again objected and filed a motion to dismiss. The bankruptcy court conducted a hearing on Albuquerque Chemical's motion to dismiss, during which both sides presented expert testimony from appraisers regarding the value of the residence in 1986 and 1998. At the conclusion of the hearing, the court denied the motion to dismiss and found that the value of the Browns' residence, as of the date their bankruptcy petition was originally filed in 1986, was $91,000.

Based upon the bankruptcy court's finding regarding the 1986 value of their residence (which was approximately $6,000 higher than the Browns' original estimate), the Browns filed an amended Schedule B-4. In the amended schedule, both Mr. and Mrs. Brown claimed homestead exemptions, totaling $40,000. The office furniture previously exempted by Mrs. Brown in lieu of her homestead exemption was moved to another category of exemption (e.g., a "wildcard exemption, tools of the trade exemption or miscellaneous personal property exemption[]") under New Mexico law. App. at 94. Although Albuquerque Chemical filed an objection to the amended Schedule B-4, the objection was overruled by the bankruptcy court.

Ultimately, the bankruptcy court issued an order avoiding Albuquerque Chemical's lien. Albuquerque Chemical appealed to the district court. The magistrate judge found no merit to Albuquerque Chemical's arguments and recommended that its appeal be denied. The district court, after allowing Albuquerque Chemical to file objections,

adopted the magistrate judge's recommendation in full, affirmed the rulings of the bankruptcy court, and dismissed the action.

II.

*Reopening of the bankruptcy case*

Albuquerque Chemical contends the bankruptcy court erred in reopening the Browns' case. According to Albuquerque Chemical, the sole purpose for reopening, to avoid liens on the Browns' home, could have been accomplished before the Browns' bankruptcy case was originally closed. Further, Albuquerque Chemical argues it was prejudiced by the reopening of the case eleven years after it was originally closed. In particular, Albuquerque Chemical contends the long delay deprived it of the opportunity to conduct a proper appraisal to determine the value of the house as of the date the Chapter 7 case was filed. Albuquerque Chemical argues this "decreased ability to vindicate itself" is "sufficient to establish laches on the part of the" Browns. Albuquerque Chemical's Opening Brief at 21.

Under the Bankruptcy Code, "[a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). A bankruptcy court's decision to reopen a bankruptcy case is reviewed by this court only for abuse of discretion. In re Woods, 173 F.3d 770, 778 (10th Cir.), cert. denied, 120 S. Ct. 187 (1999). Because there are no statutory time limits on reopening a case (or on avoiding a lien), "courts have dealt with such motions in different

4

ways." In re Bianucci, 4 F.3d 526, 528 (7th Cir. 1993). "The leading approach is permissive but incorporates an equitable defense akin to laches, so that a debtor may reopen the bankruptcy case at any time to avoid a lien absent a finding of prejudice to the creditor." Id.

Here, we conclude the bankruptcy court properly exercised its discretion in reopening the Browns' case. The Browns' purpose for reopening, to avoid outstanding liens, clearly fell within the parameters of § 350(b). It is well established that § 350(b)'s provision for "accord[ing] relief to the debtor" encompasses lien avoidance. See, e.g., In re Weinstein, 164 F.3d 677, 686 n.7 (1st Cir.), cert. denied, 119 S.Ct. 2394 (1999). Although the eleven-year delay was indeed lengthy, Albuquerque Chemical has failed to substantiate its claims of prejudice arising out of that delay. During the hearing on Albuquerque Chemical's motion to dismiss, both parties' appraisers admitted that, because of the delay, they were not able to perform all of the tasks typically associated with an appraisal (e.g., viewing the house in its 1986 condition, viewing comparable properties in their 1986 condition). Despite these apparent hindrances, however, both appraisers arrived at remarkably consistent historical valuations for the Browns' property (the Browns' expert appraised the property at $90,000, while Albuquerque Chemical's expert appraised it at $92,000), and the bankruptcy court took the average of these two figures in determining the value of the property for purposes of the case. Thus, there

appears to be little, if any, prejudice to Albuquerque Chemical in this regard.[1]  Aside from the alleged prejudice regarding the appraisals, there was no evidence that Albuquerque Chemical attempted to foreclose on the property, or otherwise incurred expenses in enforcing its lien.  See Hawkins v. Landmark Finance Co., 727 F.2d 324, 327 (4th Cir. 1984) (affirming decision not to reopen case where creditor instituted state foreclosure proceedings and "incurred court costs and counsel fees in reliance on the fact that the debtors did not challenge the validity or viability of its lien").

*Amendment of Schedule B-4*

Albuquerque Chemical contends the bankruptcy court erred in allowing the Browns, after the hearing on the motion to dismiss, to amend their Schedule B-4 and increase their collective homestead exemption from $20,000 to $40,000.  The decision to allow amendment of schedules after a case is reopened is committed to the sound discretion of the bankruptcy court and will not be set aside absent abuse of that discretion. In re Faden, 96 F.3d 792, 796 (5th Cir. 1996); In re Rosinski, 759 F.2d 539, 540-41 (6th Cir. 1985).  Generally, a debtor will be precluded from amending schedules only where he has acted in bad faith, or where the amendment will result in prejudice to a creditor.

---

[1]  We note Albuquerque Chemical presented no testimony indicating that the historical appraisal of the Browns' residence cost more than a typical appraisal.  See In re Caicedo, 159 B.R. 104, 107 (Bankr. D. Conn. 1993) (denying motion to reopen based upon prejudice to creditor resulting from increased expenses associated with performance of historical appraisal and determination of balances of prior liens).

See In re Calder, 973 F.2d 862, 867 (10th Cir. 1992); Rosinski, 759 F.2d at 541.

After reviewing the record on appeal, we find no abuse of discretion on the part of the bankruptcy court in allowing the Browns to amend their Schedule B-4. Although Albuquerque Chemical claims it was prejudiced by the Browns' amendment, its sole argument in this regard is that it incurred "the expense of litigating the [motion to avoid the lien] in reliance upon the [Browns'] original Schedule B-4." Albuquerque Chemical's Opening Brief at 29. This simply does not amount to prejudice sufficient to warrant setting aside the Browns' amended schedule. At the time the case was originally filed in 1986, the Browns reasonably believed they needed to exercise only $20,000 worth of homestead exemptions in order to protect their equity in their home. Thus, Mrs. Brown waived her homestead exemption. After the case was reopened and the parties obtained their historical appraisal figures, however, it became apparent to the Browns that they needed to amend their schedule in order to protect their equity in the residence. More specifically, given the historical appraisal figures and the district court's finding regarding the historical value of the home (which was higher than the Browns' own estimate of the value of the residence set forth in their bankruptcy petition), it was necessary for Mrs. Brown to utilize her homestead exemption. Clearly, neither party could have reasonably foreseen this outcome, and Albuquerque Chemical fails to identify precisely what it would have done differently had it known an amendment would be necessary. Indeed, other than Albuquerque Chemical's vague arguments regarding its decision to litigate,

7

there is no other evidence of prejudice resulting from the amendment.  See Hawkins, 727

F.2d at 327 (holding that loss of security interest does not constitute prejudice, at least

where the existence of the security interest is "an accidental benefit . . . obtained as a

result of a mistake on the part of their debtors or their counsel").


*Applicability of 11 U.S.C. § 522(f)*

Albuquerque Chemical contends that 11 U.S.C. § 522(f), the Bankruptcy Code

provision allowing for lien avoidance, is superfluous in this case because, under New

Mexico law, its judicial lien cannot attach to, and thus cannot impair, the Browns'

homestead exemption.  The question of whether a judicial lien is avoidable under § 522(f)

is a question of law we review de novo.  In re Shafner, 82 F.3d 426, 1996 WL 98809 at

*1 (10th Cir. 1996) (unpublished case).

At the time the Browns' bankruptcy petition was originally filed, § 522(f) provided

in pertinent part:

> Notwithstanding any waiver of exemptions . . . , the debtor may avoid the
> fixing of a lien on an interest of the debtor in property to the extent that
> such lien impairs an exemption to which the debtor would have been
> entitled under subsection (b) of this section, if such lien is–
> (1) a judicial lien.

11 U.S.C. § 522(f).[2]

---

[2] Section 522(f) was amended by Congress in 1994.  Aside from the fact the amendments are inapplicable to this case (since the case was filed in 1988), the amendments did not alter the general avoidance language cited above.

In determining whether § 522(f) applies to a particular case and can be used to avoid a lien, we employ a three-step process. In re Sanders, 39 F.3d 258, 261 (10th Cir. 1994) (citing Owen v. Owen, 500 U.S. 305, 312-13 (1991)). First, we must "determine whether the debtor is entitled to an exemption." Id. at 261. Here, it is undisputed that, under applicable New Mexico law, the Browns are each entitled to a $20,000 homestead exemption, giving them a collective homestead exemption of $40,000. See N.M. Stat. Ann. § 42-10-9 (1987).

Second, we must determine the extent to which the lien may be avoided. Sanders, 39 F.3d at 261. Under the law of this circuit applicable to cases filed prior to the 1994 amendments to the Bankruptcy Code, "a lien may not be avoided beyond the amount of the exemption."[3] Shafner, 1996 WL 98809 at *1 (citing Sanders, 39 F.3d at 261). Because the sum of Albuquerque Chemical's lien ($14,660.50) is less than $40,000, it can be totally avoided, assuming it is avoidable at all. See id. at *1.

"The third step in determining whether 522(f) applies requires the court to determine whether the lien actually impairs the exemption." Id. at *2 (citing Sanders, 39

_____

[3] As part of the 1994 amendments to the Bankruptcy Code, Congress set forth a specific formula for determining the extent to which a lien impairs an exemption, which in turn determines the extent to which a lien may be avoided. See 11 U.S.C. § 522(f)(2)(A). Notably, this formula differs from, and effectively overrides, the holding in Sanders regarding the extent to which a lien may be avoided. Because, however, the Browns' bankruptcy petition was filed well prior to the 1994 amendments, Sanders remains the controlling precedent for this case. See Shafner, 1996 WL 98809 at *1 (applying pre-amendment circuit precedent to pre-amendment bankruptcy case); In re Holloway, 81 F.3d 1062, 1069 (11th Cir. 1996) (same).

F.3d at 262).  In <u>Sanders</u>, we interpreted Utah's homestead exemption scheme and determined that it prevented a judgment lien from attaching to a debtor's homestead.  39 F.3d at 262.  Accordingly, we concluded "[a]voidance under § 522 [wa]s unnecessary because the lien [at issue] d[id] not fix upon the Utah exemption."  <u>Id.</u>  More broadly, we held that "when state law does not allow a lien to attach to exempt property, § 522(f) is superfluous and without application."  <u>Id.</u>  In <u>Shafner</u>, we applied <u>Sanders</u> and concluded that, under Colorado law, "a homestead is exempt from execution . . . [and thus] is not subject to the attachment of a judgment lien."  1996 WL 98809 at *2.  As in <u>Sanders</u>, we thus concluded in <u>Shafner</u> that § 522(f) was "extraneous."  <u>Id.</u>

Here, the outcome of the third-step question hinges upon whether New Mexico law (which the Browns relied upon for their exemptions) prevents Albuquerque Chemical's lien from attaching to, and thus impairing, the Browns' homestead exemptions.  "Under New Mexico law, a money judgment becomes a lien on the judgment debtor's realty when the transcript of the judgment docket is filed and recorded with the county clerk of the county in which the realty is situated."  <u>Ranchers State Bank v. Vega</u>, 653 P.2d 873, 875 (N.M. 1982) (citing N.M. Stat. Ann. § 39-1-6).  The effect of this general rule is tempered, however, by New Mexico's "Homestead Exemption" statute, which provides as follows:

> A married person, widow, widower or person who is supporting another person shall have exempt a homestead in a dwelling house and land occupied by him or in a dwelling house occupied by him although the dwelling is on land owned by another, provided that the dwelling is owned,

10

leased or being purchased by the person claiming the exemption. Such a person has a homestead of twenty thousand dollars ($20,000) exempt from attachment, execution or foreclosure by a judgment creditor and from any proceeding of receivers or trustees in insolvency proceedings and from executors or administrators in probate.

N.M. Stat. Ann. § 42-10-9 (1979). As this statute makes clear, the homestead exemption is "exempt from attachment, execution or foreclosure by a judgment creditor." In other words, a judicial lien attaches to the debtors' "entire interest in [a particular parcel of] real property except their homestead which remain[s] free of the lien."[4] Vega, 653 P.2d at 875. Thus, under New Mexico law, a "debtor's homestead right is fully protected and not in need of intervention by bankruptcy law." Sanders, 39 F.3d at 262.

Because Albuquerque Chemical's lien has not attached (and can never attach) to the Browns' homestead exemption, the exemption is not impaired by the lien and, as in Sanders and Shafner, "§ 522(f) is superfluous and without application." 39 F.3d at 262. Accordingly, the bankruptcy court's order avoiding Albuquerque Chemical's lien pursuant to § 522(f) was in error and should have been reversed by the district court.[5]

---

[4] In practical terms, if a judgment creditor attempts to foreclose on New Mexico property subject to the homestead exemption, the judgment debtor is entitled to assert, as an affirmative defense, the existence of the homestead exemption. See, e.g., Morgan Keegan Mortgage Co. v. Candelaria, 951 P.2d 1066, 1068 (N.M. Ct. App. 1997) (discussing mortgagor's assertion of homestead exemption in her answer to foreclosure suit); D'Avignon v. Graham, 823 P.2d 929, 932 (N.M. Ct. App. 1991) (holding "exemption is an affirmative defense which may be relied upon only as a matter of privilege"). The result is that proceeds from a foreclosure sale are subject to the exemption. See Morgan Keegan, 951 P.2d at 1068.

[5] We find it unnecessary to address Albuquerque Chemical's remaining argument
(continued...)

11

### III.

The judgment of the district court is AFFIRMED in part and REVERSED in part.


Entered for the Court

Mary Beck Briscoe
Circuit Judge

---

[5](...continued) that the bankruptcy court erred in finding there was no non-exempt equity in the Browns' residence.