**In the Matter of Henri J. BIANUCCI and Barbara J. Bianucci, Debtors–Appellants.**

No. 92–3146.

United States Court of Appeals, Seventh Circuit.

Argued April 5, 1993.

Decided Sept. 9, 1993.

Rehearing Denied Oct. 27, 1993.

Jeffrey D. Richardson, Tietz & Richardson, Decatur, IL (argued), for appellee.

Phillip R. Lamkin, Lamkin & Lamkin, Clinton, IL (argued), for debtors-appellants.

Before FLAUM and KANNE, Circuit Judges, and ENGEL, Senior Circuit Judge.*

FLAUM, Circuit Judge.

This case requires us to decide whether the debtors may reopen their bankruptcy case some two years after it was closed and seven years after the original filing. Neither the record nor the submitted briefs illuminate the factual background completely, but at least the following facts are clear. On December 10, 1984, Prairie Production Credit Association (PCA) obtained a judgment by confession on a note against Henri J. and Barbara J. Bianucci in the amount of $67,-864.14. On the same day, it filed a Memorandum of Judgment against the Bianuccis. Ten days later, the Bianuccis filed for relief under Chapter 11, later converted to Chapter 7. During the bankruptcy, PCA filed a claim for $57,650, which was disallowed for reasons that are not apparent from the record, and then an amended claim for $53,400, to which the trustee objected. The amended claim was allowed in the amount of $43,401.87 as unsecured, and PCA received a distribution of approximately $2300. All of the Bianuccis' real estate was sold or conveyed to third parties, except their personal residence, in which they claimed a homestead exemption. The case was closed on February 10, 1989.

PCA's confession of judgment created a judicial lien on the Bianuccis' real property. See In re Ashe, 712 F.2d 864 (3d Cir.1983), cert. denied, 465 U.S. 1024, 104 S.Ct. 1279, 79 L.Ed.2d 683 (1984). Under section 522(f) of the Code, the Bianuccis were entitled to avoid that lien to the extent that it impaired any exemption to which they were entitled.[1] But they never moved to avoid it. In May 1991, more than two years after their case was closed, the Bianuccis began to suspect for the first time that PCA still held a judg-ment lien against their personal residence. They asked PCA to release the lien, but PCA refused.

Nothing further happened until October 1991, when PCA filed a motion in the Circuit Court of De Witt County to revive the judgment, which would otherwise have expired in December of that year. See Ill.Rev.Stat. ch. 110, ¶ 12–101 (1989). The Bianuccis then moved to reopen their bankruptcy case, so that the lien could belatedly be avoided. They also filed a motion asking the bankruptcy court to clarify the record to determine the validity of the lien, on the theory that another section of the Code, section 506(d), had automatically voided it.[2] The bankruptcy court rejected both motions, citing the Bianuccis' long delay in bringing the motion. It also observed that the Bianuccis took no action for five months after they became aware of the lien, waiting until PCA had already incurred court costs in attempting to revive the judgment in state court. On appeal, the district court affirmed on the same grounds.

Both sides neglected to inform us that the action to revive the judgment had already been litigated in the Illinois courts up to the appellate level. See Prairie Production Credit Ass'n v. Bianucci, 234 Ill.App.3d 1072, 175 Ill.Dec. 592, 600 N.E.2d 523 (4th Dist. 1992). The Bianuccis' main defense to that action was the same argument presented in their motion to clarify—that section 506(d) voided the lien. The Illinois Appellate Court, Fourth District, declined to rule on that issue, noting that the case was still moving through the federal court system, and calling the question of how section 506 operates "technical and complicated." Instead, the court announced that it would refrain from

---

* The Honorable Albert J. Engel of the Sixth Circuit Court of Appeals, sitting by designation.

1. Section 522(f)(1) provides in pertinent part:

 Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—
 (1) a judicial lien....
 11 U.S.C. § 522(f)(1).

2. Section 506(d) provides:

 To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless—
 (1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or
 (2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.
 11 U.S.C. § 506(d).

ruling on the motion to revive until the federal courts had decided the issue.

Whether any lien survived the Bianuccis' discharge is indeed a difficult question. According to the Claims Register, the bankruptcy court allowed PCA to participate as an unsecured creditor in the amount of $43,000, and as a secured creditor for a disputed, smaller amount, either $10,000 (the difference between the full allowed claim and the unsecured portion) or $6000 (the amount PCA claimed at the bankruptcy court's hearing on the motion to reopen). Presumably, the secured claim was paid. One piece of evidence supporting that conclusion is the notation "sec pd" which was entered in PCA's space in the Claims Register. Another is the fact that PCA received a distribution of $2332.67 on the unsecured portion of its claim. Since unsecured claims are paid only after secured claims, logic suggests that PCA must have collected on its secured claim. In that event, it would appear that PCA has no surviving lien, since the Bianuccis were discharged in bankruptcy. Against this argument stands the Supreme Court's recent decision in *Dewsnup v. Timm,* —— U.S. ——, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992), in which the Court held that "the creditor's lien stays with the real property until the foreclosure," *id.* —— U.S. at ——, at 778, even when the creditor participates in the bankruptcy proceeding. As a further complicating factor, the Bianuccis allege that the trustee abandoned their residence after he concluded that it contained no equity once real estate taxes and a mortgage were figured in.

That issue is not, however, presently before us. The bankruptcy court correctly observed that the appropriate forum for raising the issue of the validity of PCA's lien is the state court where PCA seeks to revive (and eventually execute) the judgment. Our sole task is to decide whether the Bianuccis may reopen their bankruptcy case to avoid the lien now.

Section 350(b) of the Code provides: "A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). We have held that the decision whether to reopen a case is within the broad discretion of the bankruptcy court. *See In re Shondel,* 950 F.2d 1301, 1304 (7th Cir.1991) (citing *Hawkins v. Landmark Fin. Co.,* 727 F.2d 324, 326 (4th Cir. 1984) and *In re Thomas,* 204 F.2d 788, 791 (7th Cir.1953)). Neither section 350(b) nor section 522(f), the lien avoidance provision that the Bianuccis seek to invoke, sets time limits on debtors' motions to avoid liens, and courts have dealt with such motions in different ways. *See* 1 Robert E. Ginsberg & Robert D. Martin, *Bankruptcy: Text, Statutes, Rules* § 6.02[f], at 6–43 to –44 (3d ed. 1992); 2 Lawrence P. King, *Collier on Bankruptcy* ¶ 350.03, at 350–7 to –13 (15th ed. 1993); *see also* Michael P. Saber, Recent Development, *Section 350(b): The Law of Reopening,* 5 Bankr.Dev.J. 63 (1987). The leading approach is permissive but incorporates an equitable defense akin to laches, so that a debtor may reopen the bankruptcy case at any time to avoid a lien absent a finding of prejudice to the creditor. *See, e.g., In re Chabot,* 992 F.2d 891, 893 (9th Cir.1993) (citing *In re Yazzie,* 24 B.R. 576, 577–78 (Bankr. 9th Cir.1982)); *In re Carilli,* 65 B.R. 280, 281 (Bankr.E.D.N.Y.1986); *Rheinbolt v. Credit Thrift of Am., Inc.,* 24 B.R. 167, 170 (Bankr.S.D.Ohio 1982).

 Passage of time in itself does not constitute prejudice. *See, e.g., In re Chabot,* 992 F.2d at 893; *In re Costello,* 72 B.R. 841, 843 (Bankr.E.D.N.Y.1987). But delay may be prejudicial when it is combined with other factors. In *Hawkins v. Landmark Fin. Co.,* 727 F.2d 324 (4th Cir.1984), a case similar to ours, the Fourth Circuit upheld a bankruptcy court's refusal to reopen a case because eight months had passed since it was closed and the creditor had incurred court costs and counsel fees in commencing foreclosure proceedings on its lien. *See also In re Serafini,* 30 B.R. 606, 608 (Bankr.W.D.Pa.1983), *aff'd,* 41 B.R. 880 (W.D.Pa.1984); *cf. In re Towns,* 16 B.R. 949, 954 (Bankr.N.D.Iowa 1982) (holding that once a creditor has commenced a replevin action against the debtor's property, the debtor may not move to avoid the lien). Some courts have held that under those circumstances, the debtor may reopen the case so long as he or she reimburses the

creditor for any outlays incurred to enforce its lien. *See, e.g., In re Beshensky,* 68 B.R. 452, 455 (Bankr.E.D.Wis.1987); *In re Parker,* 64 B.R. 402, 404 (Bankr.M.D.Fla.1986); *Noble v. Yingling,* 37 B.R. 647, 651 (D.Del. 1984). While it may be permissible for a bankruptcy court to condition reopening on reimbursement, we do not believe the court must do so. In this case, the Bianuccis delayed bringing their motions for an inordinate length of time, including a five-month period during which they had actual knowledge that PCA's judgment lien had never affirmatively been avoided. That factor, combined with PCA's expenses to revive its judgment (which now include, in addition to the action in the circuit court, a defense before the appellate court)[3] provide ample reason for the bankruptcy court to decline to reopen the case.

**AFFIRMED.**

**3.** The Bianuccis argue that they contemplated immediate court action to reopen the case and avoid the lien, but decided instead to do nothing in the hope that the judgment on which the lien was based would expire in December 1991. Adopting a wait-and-see attitude to the matter of the enforceability of PCA's lien does not support the Bianuccis' professions of good faith in their conduct in this case.