PRAIRIE PRODUCTION CREDIT ASSOCIATION, Plaintiff-Appellant and Cross-Appellee, v. HENRI J. BIANUCCI *et al.*, Defendants-Appellees and Cross-Appellants.

Fourth District   No. 4—94—0871

Argued May 23, 1995.—Opinion filed June 30, 1995.

McCULLOUGH, J., specially concurring.

Jeffrey D. Richardson (argued), of Tietz & Richardson, of Decatur, for appellant.

Phillip R. Lamkin (argued), of Lamkin & Lamkin, P.C., of Clinton, for appellees.

JUSTICE GREEN delivered the opinion of the court:

On December 10, 1984, plaintiff Prairie Production Credit Association (PCA) obtained a judgment by confession in the circuit court of De Witt County against defendants Henri J. and Barbara J. Bianucci for $67,864.14 plus costs, which included an attorney fee in the sum of $1,400. On December 20, 1984, defendants filed a petition in the Bankruptcy Court of the Central District of Illinois under chapter 13 of the Bankruptcy Code (Code) (11 U.S.C. § 1301 *et seq.* (1988)) seeking protection under the Code. The proceeding was subsequently changed to a proceeding under chapter 7 of the Code (11 U.S.C. § 701 *et seq.* (1988)). The trustee in bankruptcy abandoned the residence property of the defendants as having no value beyond the liens upon it.

On September 19, 1991, plaintiff filed a motion in the foregoing proceedings in the circuit court of De Witt County seeking to revive the December 10, 1984, judgment by confession. Defendants filed a response supported by affidavits. After a hearing at which no evidence was presented, the circuit court entered an order on February 11, 1992, finding that the December 10, 1984, judgment was "still in force and effect, [had] not [been] reversed or set aside, and [had] not been paid by defendants." The circuit court then set forth that the judgment was revived and ordered execution to issue. Defendants appealed to this court.

We reversed and remanded with directions. (*Prairie Production Credit Association v. Bianucci* (1992), 234 Ill. App. 3d 1072, 600 N.E.2d 523 (*Bianucci I*).) We held that (1) a motion to revive a judgment against one who subsequently is discharged in bankruptcy lies to obtain an *in rem* declaration of the reviving of the lien of the judgment, to the extent that the judgment has not been paid; (2) the enforceability of the judgment is at issue in such proceeding; and (3) under the facts presented, State laws did not defeat or void the judgment lien, even though the personal liability of the judgment debtors had been discharged in the bankruptcy proceeding.

At the time of the *Bianucci I* decision, a request by defendants to open the bankruptcy proceeding to obtain a determination that the lien of plaintiff's judgment was void was then pending in the Federal court system. Accordingly, we opted to not decide whether that lien was void under the Code. We concluded that, in any event, the order of revival should recite that the revived judgment had only *in rem* effect. We reversed and remanded with directions to the circuit court

to await the ultimate decision in the Federal courts. If the Federal courts decided that issue, our mandate required that the circuit court proceed accordingly. We also ordered that if the Federal courts did not decide the issue, the circuit court would have to decide it and rule accordingly.

In the case of *In re Bianucci* (7th Cir. 1993), 4 F.3d 526, the order of the United States District Court for the Central District of Illinois declining to open the bankruptcy proceeding was affirmed. The circuit court of De Witt County then proceeded to hold an evidentiary hearing. That court then entered an order on September 13, 1994, finding that a lien in the sum of $10,000 remained on the abandoned residential property and ordered the judgment in issue revived to that extent enforceable only *in rem*. Plaintiff has appealed from that judgment and defendants have cross-appealed. We affirm.

The circuit court supported its judgment order with a concise memorandum opinion. It first addressed the defendants' contention that any lien possessed by plaintiff was rendered void by the provisions of sections 506(a) and (d) of the Code (11 U.S.C. §§ 506(a), (d) (1988)). We mentioned those provisions in *Bianucci I*. The court concluded that the decision in *Dewsnup v. Timm* (1992), 502 U.S. 410, 116 L. Ed. 2d 903, 112 S. Ct. 773, conclusively determined that any lien-voiding aspects of sections 506(a) and (d) were not applicable. The opinion then explained that the court found that through negotiations with the trustee, plaintiff had been permitted to file an unsecured claim in the sum of $43,401.87, upon which it received a dividend of 5.375% or the sum of $2,332.67, and that this left a balance of its original judgment, less receipts from other collateral, of $10,000. We subsequently explain the circuit court's reasoning in greater detail. We agree with that reasoning.

On appeal, plaintiff asserts that it should have been awarded the full amount of the original judgment it obtained plus interest and costs, less the sums it received from other collateral, and the dividend of $2,332.67. As they did in the circuit court, defendants contend that under sections 506(a) and (d), plaintiff's judgment lien was void. They also contend that having filed and obtained a dividend from an unsecured claim, plaintiff has waived any right to a claim of any secured lien. We do not agree that plaintiff has waived any right to a lien but we agree with the circuit court that the amount of that lien has been reduced to a sum which the circuit court could have properly found to be $10,000.

■ Section 506(a) of the Code has a substantial bearing upon our decision. It states as follows:

"An allowed claim of a creditor secured by a lien on property in

which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest." (11 U.S.C. § 506(a) (1988).)

Section 506(d) provides:

"To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless—

(1) such claim was disallowed only under section 502(b)(5) or 502(e) [(11 U.S.C. §§ 502(b)(5), (e) (1988))] of this title; or

(2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title." (11 U.S.C. § 506(d) (1988).)

Sections 502(b)(5) and (e) are not relevant to the instant case.

On their face, sections 506(a) and (d) would seem to raise a serious question as to whether plaintiff's secured claim on defendants' residential property was void as it had never been allowed as a secured claim. However, the question is complicated, and the decision in *Dewsnup* has bearing upon that question. As *Dewsnup* is also significant on other issues, a brief explanation of it is appropriate. There, a bankrupt couple ultimately brought a chapter 7 proceeding. They then filed a petition pursuant to section 506(d) to have the lien of the mortgage on their residence reduced to its actual value on the theory that any greater sum was void pursuant to sections 506(a) and (d). The bankruptcy court assumed that the residence would be abandoned by the trustee and denied the request. The United States Supreme Court ultimately upheld that ruling.

The basic reason behind the *Dewsnup* decision was that to allow the petitioner to "strip down" the amount of the lien on the property to be abandoned would violate the long-standing rule "that liens pass through bankruptcy unaffected." (*Dewsnup*, 502 U.S. at 417, 116 L. Ed. 2d at 911, 112 S. Ct. at 778.) The Court concluded that sections 506(a) and (d) contained too much ambiguity to permit an interpretation that would create such a drastic change in procedure. There, unlike here, the lien was a mortgage, and the Court gave significance to the fact that the parties had bargained for the rights arising from it. (*Dewsnup*, 502 U.S. at 417, 116 L. Ed. 2d at 911, 112 S. Ct. at 778.) That Court also noted that a secured claim had been allowed for the residence. That had not happened here.

Here the evidence upon which the circuit court's judgment was based consisted of the testimony of Kevin Uden, plaintiff's loan officer, defendant Henri J. Bianucci, Clay Cox, the bankruptcy trustee, and plaintiff's attorney, Jeffrey D. Richardson. Uden testified that as of that date, June 16, 1994, after deducting the stipulated payments which plaintiff had received from collateral sources, the amount owed on the judgment, including accrued interest, was $78,348.62. Bianucci testified that he and his wife had owned the house, which was subject to the lien in dispute in this case, had lived in it, and had claimed it as an exemption.

Much of the examination of Cox concerned the operation of the Code. He testified that plaintiff had filed a secured claim for $57,650.42. He then identified exhibits which showed that (1) plaintiff had filed a second secured claim for $53,407.87; (2) the first claim had been disallowed; and (3) the second claim was allowed in the sum of $43,407.87 as an *unsecured* claim. Cox said that he did not remember the reason for that sequence of events, but it likely occurred because agreement was reached that a certain portion of plaintiff's claim was unsecured and a certain portion was secured, and that the claim which was to become unsecured would be reduced to $43,407.87.

Cox agreed that a stipulation of the parties showed that plaintiff had received $24,150.67 from other collateral to apply on its judgment. He further agreed that unsecured creditors are not entitled to interest on the claims after the petition in bankruptcy has been filed. Richardson's testimony did not reveal any information helpful to our decision.

We do not agree with plaintiff's theory that it is entitled to a revived judgment with deduction only for amounts it has been paid from other collateral and for the bankruptcy dividend it received. Clearly where, as here, a bankruptcy creditor has an undersecured claim, the creditor can recover partly on a secured claim and partly on an unsecured claim. (*United States v. Ron Pair Enterprises, Inc.* (1989), 489 U.S. 235, 239, 103 L. Ed. 2d 290, 297, 109 S. Ct. 1026, 1029; *In re Bloomingdale Partners* (N.D. Ill. 1993), 160 Bankr. 93, 97.) However, a rule which would enable the creditor, after receiving a dividend on the unsecured claim, to still have a secured claim for the full amount of the total claim diminished only by the amount of the dividend seems to be unfair to other unsecured creditors.

■ The described problems with making allocation between bifurcated claims involved here arise only when, as here, the security for the secured claim arises from an abandoned asset from which the claimant hopes to obtain reimbursement long after the bankruptcy is closed. When secured and unsecured claims are brought in the bank-

ruptcy proceeding, the secured claims are paid first. (*Bianucci*, 4 F.3d at 528.) A partially paid holder of a secured claim can then be awarded a dividend on an unsecured claim based upon the deficiency of the security to cover the whole claim before bifurcation.

Here, under plaintiff's theory, it would share with other unsecured creditors who will have received only a small portion of their claims and still have the opportunity to eventually have its total claim paid in full if the value of the security is sufficient. We are unaware of any case that supports handling the matter as plaintiff suggests. In *United States National Bank v. Chase National Bank* (1947), 331 U.S. 28, 34-35, 91 L. Ed. 1320, 1325, 67 S. Ct. 1041, 1045, the Court noted that under existing law, a secured creditor could receive dividends as a general creditor only after the value of the security had been determined and deducted from the claim. However, there, where secured creditors had made special concessions pursuant to a plan beneficial to unsecured creditors, the equity of the situation justified a variance from the rule. No such equities exist here.

Plaintiff cites *In re Hernandez* (N.D. Ill. 1993), 162 Bankr. 160, 164. There, a debtor in a chapter 13 bankruptcy objected to a secured claim by the holder of a lien upon the debtor's automobile because the value of the lien was less than the amount of the indebtedness. The bankruptcy court ruled that the creditor would be allowed to receive from the bankruptcy plan only the present value of the collateral, but after such payment, the lien on the automobile would remain until the lien had been satisfied in full. The *Hernandez* court emphasized the strong rejection in *Dewsnup* of any procedure which would permit a bankrupt to require that the amount of an undersecured claim on abandoned property be reduced to the actual value of the security.

*Hernandez* concerned a proceeding under chapter 13 of the Code which concerned a payment plan, while the instant case was changed to a chapter 7 procedure which involved liquidation of the bankrupt's estate. In *Hernandez*, the *debtor* took action to have a creditor's secured claim reduced to its present value. Here, the creditor took action to bifurcate its claim, to recover on an unsecured claim, and to share the residue available for the unsecured creditors. We conclude that *Hernandez* does not determine our decision here.

When claims are bifurcated because of the insufficiency of the security, and the secured claim cannot be liquidated first, the best procedure and that required under section 506(a) of the Code would seem to be to determine the value of the secured claim and then allow the creditor to file an unsecured claim for the balance. Under

these circumstances, the secured claim would be reduced to the value given it. This would be a "stripping down," but not one brought at the request of the bankrupt. Rather, it would arise from the action of the creditor in seeking to obtain a dividend from the residue.

■ The foregoing procedure is substantially that which was followed here. The circuit court recognized that the second secured claim which was filed by plaintiff was in the sum of $53,150.67. The court concluded that must have been the total unpaid amount of the judgment at that time. Plaintiff had realized $24,150.67 from other security and the original judgment was in the sum of $67,864.14 plus costs and attorney fees and some interest had been earned. The figures do not lead to a result of $53,150.67, but considering the testimony of Cox, the circuit court was not in error in concluding that $53,150.67 had been determined to be the balance due on the judgment.

The circuit court correctly reasoned that if plaintiff had not filed an unsecured claim, the balance on the judgment would have remained at $53,150.67. The precedent of *Dewsnup* would have prevented the defendants from scaling down the amount of the lien under the provisions of section 506(a) of the Code. The court also correctly reasoned that by filing an unsecured claim for $43,150.67, plaintiff did affect a scaling down of the amount of the lien by that much because of the unfairness to other unsecured creditors that would result if plaintiff could bifurcate its claim by proceeding on an unsecured claim first and then reducing its lien only by the amount of credit it would receive. Analogy to the rule of section 506(a) of the Code indicates that upon seeking an unsecured claim for $43,150.67 of the $53,150.67 owed on the judgment, plaintiff recognized a reduction in the value of its judgment lien to the sum of $10,000 for which sum the circuit court properly revived the judgment as an *in rem* lien.

We affirm that judgment.

Affirmed.

KNECHT, P.J., concurs.

JUSTICE McCULLOUGH, specially concurring:
I agree and concur in affirming the trial court.

The bankruptcy court and the court of appeals refused to determine the validity of the lien, indicating that it was for the State courts to decide. The trial court was correct in stating that where the trustee abandons the real estate, it is no longer a part of the bankruptcy and no longer affected by the bankruptcy laws.

Plaintiff had two forms of security, the collateral pledged for the loan and the judgment of December 10, 1984, recorded prior to the filing of the bankruptcy petition.

Plaintiff has three sources of recovery. They are the collateral received by plaintiff from the secured loan in the amount of $24,150.67; a 5.375% dividend, $2,332.67 on the unsecured portion of the claim, $43,401.87; and a recorded judgment against any property of defendant not held by the trustee in the bankruptcy proceeding.

Because the Federal court declined to determine the validity of the *in rem* judgment, it is unnecessary to determine the application of section 506 of the Code. The real estate was subject to the lien of the recorded judgment. It then becomes a matter of proof by the creditor as to the extent of that lien. Neither party is satisfied with the trial court's finding a lien in the amount of $10,000 and enforceable *in rem* only. The trial court's decision as to the validity of the lien was correct and the amount set by the trial court is not against the manifest weight of the evidence.