In the
United States Court of Appeals
For the Seventh Circuit

No. 99-4328

Maytag Corporation,

Applicant-Appellee,

v.

Navistar International Transportation Corp., et al.,

Respondents-Appellants.


Appeal from the United States District Court
for the Northern District of Illinois, Eastern
Division.
No. 75 B 2697--Charles P. Kocoras, Judge.


Argued June 5, 2000--Decided June 27, 2000


   Before Easterbrook, Diane P. Wood, and
Evans, Circuit Judges.

   Easterbrook, Circuit Judge.  Twenty years
ago the storied Rock Island Line, losing
about $40 million annually, abandoned its
railroad operations as part of a
bankruptcy under sec.77 of the Bankruptcy
Act of 1898. See Chicago, Rock Island &
Pacific R.R., 363 I.C.C. 150 (1980). Free
of its cash sinkhole, the Rock Island
retired its debts and emerged from
bankruptcy in 1984 as the Chicago Pacific
Corporation, a holding company with more
than $350 million in liquid assets,
substantial operating loss carryovers,
and a portfolio of miscellaneous business
ventures. In January 1989 Chicago Pacific
merged into Maytag Corporation,
manufacturer of refrigerators, ranges,
and other appliances.

   One of Chicago Pacific's assets when the
bankruptcy wrapped up was the Iowa
Transfer Railway, which owned a railyard
in Rock Island, Illinois, near the Sylvan
Slough, a tributary of the Mississippi
River. Four months out of bankruptcy,
Chicago Pacific sold the Iowa Transfer to
Heartland Rail Corporation, which leased

the yard and other operating assets to Iowa Interstate Railroad. Iowa Interstate has operated that business ever since. In 1993 the Coast Guard concluded that petroleum is leaking from the railyard into the Sylvan Slough. Heartland and Iowa Interstate are cleaning up the premises and adjacent land, an expensive endeavor. Two of their neighbors, Navistar International Transportation Corp. and the Burlington Northern & Santa Fe Railway, blame Heartland and Iowa Interstate for pollution. They have sued under the Oil Pollution Act of 1990, 33 U.S.C. sec.sec. 2701-52, in the Central District of Illinois, demanding that Heartland and Iowa Interstate contribute toward their own cleanup costs. Heartland, Iowa Interstate, Navistar, and Burlington Northern all believe that much of the oil seeped into the land while the Rock Island Line was operating the yard. All four have added Maytag (as Chicago Pacific's successor) as a third-party defendant in the Central District action, seeking contribution under Illinois law, 740 ILCS 100/2, and perhaps federal law as well (though both the complaint and the parties' briefs in this court are silent on the legal theory underlying the demand for contribution from Maytag).

Maytag asked the Northern District of Illinois, where the Rock Island bankruptcy had been administered, to enjoin prosecution of the claim for contribution. It offered two theories: first that a request for recovery on account of pollutants deposited before 1984 is a claim in bankruptcy barred by the injunction issued when the bankruptcy was closed, and second that because the Rock Island was "liquidated" rather than "reorganized" Maytag did not inherit any of the Rock Island's debts. See In re Erie Lackawanna Ry., 803 F.2d 881 (6th Cir. 1986). The second point concerns the general law of corporate obligations. Debts do not pass to those who buy assets (unless contracts provide for this transfer), though shareholders may be liable up to the amount of a net distribution when a corporation dissolves, see Model Business Corporation Act sec.14.07(d)(2), and federal law does not displace the norm that corporate liability ends with the corporation's existence. Section 113(a)(1) of the Comprehensive Environmental Response, Compensation, and Liability Act (cercla),

42 U.S.C. sec.9613(a)(1), permits a person who has paid for a cleanup to obtain contribution "from any other person who is liable or potentially liable under section 107(a)"; sec.107(a)(2) in turn allows recovery from "any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of" (emphasis added)./* A buyer or distributee of a polluter's assets does not qualify under this language. Citizens Electric Corp. v. Bituminous Fire & Marine Insurance Co., 68 F.3d 1016, 1021–22 (7th Cir. 1995). Cf. United States v. Bestfoods, 524 U.S. 51 (1998) (corporate form must be respected in litigation under cercla). Even when state law makes the buyer of assets that constitute an ongoing business liable as a successor, it does not impose liability on firms that purchase assets unrelated to those that created the deferred liability. But this point has nothing to do with bankruptcy law in general or the Rock Island reorganization in particular. If as Maytag insists it is a stranger to Rock Island's corporate obligations and therefore is not a "person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of", it is equally a stranger to Rock Island's bankruptcy and is not entitled to relief from the Northern District. If, on the other hand, Maytag is the Rock Island's successor, and therefore entitled to take advantage of the terminating injunction, it is properly in the Northern District, but cannot prevail on its second line of argument.

Disregarding our conclusion in In re Chicago, Rock Island & Pacific R.R., 794 F.2d 1182 (7th Cir. 1986), an earlier episode in this case, that bankruptcy courts do not have perpetual authority to grant protection to persons who acquire a debtor's assets, see also Zerand-Bernal Group, Inc. v. Cox, 23 F.3d 159 (7th Cir. 1994); Pettibone Corp. v. Easley, 935 F.2d 120 (7th Cir. 1991), the Northern District addressed the second of Maytag's arguments, concluded that the Rock Island Line had been liquidated rather than reorganized, and enjoined prosecution of the Central District action against Maytag. 1999 U.S. Dist. Lexis 19455 (N.D.

Ill. Dec. 2, 1999). (The Northern District's subject-matter jurisdiction is not in question, given Maytag's invocation of the injunction, and as the parties do not contest the court's apparent resort to the supplemental jurisdiction to consider Maytag's second theory, we do not pursue the question whether this would have been better left to the Central District. See Myers v. County of Lake, 30 F.3d 847 (7th Cir. 1994).) According to the Northern District,

the Rock Island abandoned and liquidated its rail business more than three years prior to the consummation order. The only assets it retained were non-rail related, and which were used to create [Chicago Pacific] in an effort to maximize the ability to satisfy the claims of the Rock Island's creditors. ... Therefore, we ... [hold] that the Rock Island was liquidated, eliminating any entity which might be sued, regardless of when the claim arose.

The underpinning of this passage, and of the district court's conclusion, is that abandonment of the rail business is the same thing as corporate liquidation. But that is untenable. Corporations change lines of business frequently without liquidating. If Maytag tomorrow were to abjure the washing-machine business to concentrate on refrigerators and microwave ovens, it would not have "liquidated" and would remain liable for debts (including deferred environmental liabilities) associated with its whole line of appliances.

Just so with the Rock Island. During bankruptcy the Rock Island quit the railroad business but retained substantial assets. The corporate entity was renamed "Chicago Pacific Corporation" at the close of the bankruptcy, and Chicago Pacific avowedly was a continuation of the original firm, rather than (say) the buyer or distributee of the Rock Island's assets. How else could Chicago Pacific have retained the Rock Island's substantial operating loss carryforwards? Tax attributes cannot be sold or given away; only the company that generated the losses may use them. When the bankruptcy wrapped up, accumulated tax losses were a major asset of the estate. It would have been folly to throw

them away, as a liquidation would have done. And there is substantial reason to doubt that sec.77 of the old Bankruptcy Act even allowed liquidations; certainly they could not be accomplished under that name. See Julie A. Veach, On Considering the Public Interest in Bankruptcy: Looking to the Railroads for Answers, 72 Ind. L.J. 1211, 1221 (1997).

Liquidation in or out of bankruptcy means the end of a corporation's existence. Liquidation may occur without closing down a line of business: a firm may sell its assets as a going concern, then distribute the proceeds to its creditors (and, if a surplus remains, to its equity holders) and dissolve. See Douglas G. Baird, The Elements of Bankruptcy 15-16, 255-56 (rev. ed. 1993). Likewise abandonment may occur without liquidation. Many a firm in bankruptcy has a positive cash flow from current operations but is unable to meet its debts--perhaps because it has made promises to creditors that prove excessive in retrospect, perhaps because one line of business has gone sour. Such debtors withdraw from the losing line of business (by selling it en bloc, selling it piecemeal, or abandoning it utterly) and restructure their debt, emerging with bright prospects in their remaining endeavors. That classic reorganization is exactly what Rock Island the corporation did, retaining its profitable activities and transmuting into Chicago Pacific Corporation (and then Maytag), even though the Rock Island Line is defunct. See In re Penn Central Transportation Co., 944 F.2d 164 (3d Cir. 1991). To the extent Erie Lackawanna may hold that getting out of the railroad business is the same thing as "liquidation" for purposes of corporate liability, it would be incompatible not only with Penn Central but also with the normal understanding of corporate liquidation. But that would not be the best interpretation of Erie Lackawanna, which rests on a special liquidation provision in 45 U.S.C. sec.791(b)(4), not on sec.77 of the Bankruptcy Act. See Lemelle v. Universal Mfg. Corp., 18 F.3d 1268, 1273 n.3 (5th Cir. 1994). The Rock Islandbankruptcy did not entail use of sec.791(b)(4). Earlier appellate proceedings arising from the Rock Island bankruptcy say, or assume, that Chicago Pacific is the same corporation as the

debtor, and that a reorganization occurred. See In re Chicago, Rock Island & Pacific R.R., 788 F.2d 1280, 1281-82 (7th Cir. 1986); Chicago Pacific Corp. v. Canada Life Assurance Co., 850 F.2d 334, 335 (7th Cir. 1988). What was an assumption in 1986 and 1988 now becomes a holding.

On remand the district court must consider whether Maytag, as the continuation of the Rock Island, is entitled to protection under the injunction issued in 1984. It is difficult to see why the injunction matters to either Heartland or Iowa Interstate; their recovery depends on the terms of the sale, which occurred after the end of the bankruptcy. Lines of business may be spun off with or without the possibility of deferred liability for cleanup expenses. See PMC, Inc. v. Sherwin-Williams Co., 151 F.3d 610, 613 (7th Cir. 1998); Truck Components Inc. v. Beatrice Co., 143 F.3d 1057 (7th Cir. 1998). If Heartland and derivatively Iowa Interstate obtained a better price because they agreed to bear any costs of cleanup themselves, they must live with that deal; they cannot have both the low price and contribution too. Similarly if Chicago Pacific promised indemnity or contribution, it may not appeal to the earlier injunction to escape its bargain. But Navistar and Burlington Northern are strangers to that arrangement and thus unaffected by it. They are entitled to proceed under sec.113(f)(2) because Chicago Pacific is the "person who at the time of disposal of any hazardous substance owned or operated [the] facility at which [the] hazardous substances were disposed of", and Maytag as the surviving corporation in a merger bears all of Chicago Pacific's liabilities. Thus for Navistar and Burlington Northern the terms of the 1984 injunction may make all the difference-- though even without the injunction Maytag may invoke the principle that bankruptcy effectively cleaves the debtor in two, preventing the reorganized firm from being saddled with debts attributable to pre-bankruptcy activities. See Boston & Maine Corp. v. Chicago Pacific Corp., 785 F.2d 562 (7th Cir. 1986); In re CMC Heartland Partners, 966 F.2d 1143 (7th Cir. 1992). We have resisted the temptation to examine the terms of the 1984 injunction, because the parties

agree that the district judge should consider these in the first instance, and that agreement ensured that the subject was not fully briefed in this court.

Reversed and Remanded

/*  We refer to cercla in this opinion with diffidence, because the plaintiffs in the Central District action are being coy about their legal theory. cercla is the normal basis for contribution in environmental-cleanup cases, but the Central District complaint does not mention it, relying instead on the Oil Pollution Act of 1990, which like cercla contains a contribution provision. 33 U.S.C. sec.2709. But contribution under the Oil Pollution Act is available only from a person liable under some other provision of the Oil Pollution Act or another statute. If the other statute turns out to be cercla, then sec.2709 adds nothing. If instead the plaintiffs argue that Maytag is liable under the Oil Pollution Act itself, then they must establish that Maytag is a "responsible party" under sec.2701(32)(B), a definition that appears to be more restrictive than cercla's. To simplify exposition, we assume that the demand for contribution ultimately will depend on cercla-- but without locking the litigants into that statute or resolving any issue about the potential scope of recovery under the Oil Pollution Act or any other federal environmental statute, such as the Resource Conservation and Recovery Act of 1976, 42 U.S.C. Ch. 82.