In the
United States Court of Appeals
For the Seventh Circuit

No. 01-2930

In the Matter of:

Mary Anne Zurn,

Debtor-Appellant

Aldo E. Botti, et al.,

Creditors-Appellees

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 00 C 4356--John W. Darrah, Judge.

Argued February 11, 2002--Decided May 15, 2002


   Before Easterbrook, Ripple, and Diane P.
Wood, Circuit Judges.

   Easterbrook, Circuit Judge.  "Only a
belief that bankruptcy is forever could
produce a case such as this." That
sentiment, which opens the opinion in
Pettibone Corp. v. Easley, 935 F.2d 120,
121 (7th Cir. 1991), is equally
applicable to this long-running dispute.

   Aldo Botti and his former client, Mary
Anne Zurn, have spent the last decade
debating the quality of legal work Botti
provided to Zurn during divorce
litigation, and torts that Zurn believes
Botti to have committed during the course
of his representation. Zurn's suit in
Illinois was met by a request for
sanctions; Botti also argued in
acountersuit that Zurn still owed money
for legal fees. When the dust settled in
the state's trial court, Botti emerged
with a judgment of about $180,000. To
avoid paying, Zurn filed a federal
bankruptcy proceeding. It soon became
clear that the bankruptcy court would not
allow Zurn to retain the stakes without
accruing interest during an appeal in
state court, nor would the bankruptcy
court take over the appellate function
and decide the matter itself. After the
bankruptcy court formally decided to
abstain from any role in the ongoing
state litigation, Zurn filed a plan

promising full payment to all creditors, including Botti. She paid the sums he claimed as a creditor, her plan was approved, and the federal proceedings were dismissed in April 1996.

Meanwhile the litigation continued in Illinois. In March 1998 the state's appellate court reversed the judgments to the extent that they had required Zurn to pay Botti. With respect to Zurn's claims against Botti, the appellate court decided three in Botti's favor but held that Zurn's claim for battery had been dismissed improperly. At this point Botti should have returned the money Zurn had paid to satisfy the judgments. Buzz Barton & Associates, Inc. v. Giannone, 108 Ill. 2d 373, 381-82, 483 N.E.2d 1271, 1275 (1985). See also Richardson v. Penfold, 900 F.2d 116, 118 (7th Cir. 1990); Palmer v. Chicago, 806 F.2d 1316, 1319 (7th Cir. 1986). Yet he did not do so, though it is hard to see how he could be entitled to keep the money after the reversal. The appellate decision left each side with unresolved legal claims against the other, but neither took timely steps to resume the litigation in the trial court. Illinois requires a litigant that wants to continue the proceedings after an appeal to act within a reasonable period after the appellate mandate (which issued in November 1998). See Ill. S. Ct. R. 369(c); Illinois v. Eidel, 319 Ill. App. 496, 745 N.E.2d 736 (2d Dist. 2001). Botti has never attempted to reinstate his suit seeking legal fees. Apparently Botti believes that, because he holds the money paid under the reversed judgment, it is no longer necessary to establish a legal entitlement to these funds.

For her part, Zurn allowed 13 months to pass and then moved to reopen, not the state litigation, but the bankruptcy proceeding. She asked the bankruptcy judge to order Botti to return the money that had been paid under the plan. A few weeks later (in January 2000) she tried to reinstate the litigation in the state's trial court. Both the bankruptcy judge and the state judge said no. The state judge concluded that Zurn's request was untimely, and after initially granting some of the relief Zurn had requested the bankruptcy judge changed his mind. The details of events in the bankruptcy court do not matter.

Ultimately, Bankruptcy Judge Wedoff concluded that Zurn had not supplied adequate cause to reopen the proceedings under 11 U.S.C. sec.350(b), that it was not possible to "enforce the plan" (as Zurn had requested in a separate motion) because the plan had been carried out to the letter, and that state rather than federal tribunals offer the right forums for final resolution of the disputes between Zurn and Botti.

Zurn did not appeal within the state system, but she did ask a district judge to review the bankruptcy judge's decision. The district judge agreed with the bankruptcy judge's bottom line but gave different reasons. He concluded, first, that reopening is barred by the Rooker-Feldman doctrine, see Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983), and, second, that Zurn has no remaining state remedies and thus is not entitled to restitution. Bankruptcy courts implement entitlements under state law, see Butner v. United States, 440 U.S. 48 (1979), and if as a matter of Illinois law Zurn has lost her right to restitution then there is no claim to vindicate in bankruptcy. Dismayed by this turn of events--the bankruptcy judge sent her claim to state court, while the district judge wiped it out--Zurn has appealed to us.

The district court characterized its decision as one affirming the bankruptcy judge's decision to abstain rather than interfere with state litigation. If that is the right understanding, then 28 U.S.C. sec.1334(d) blocks appellate review. But the district judge's use of language was imprecise. The bankruptcy judge discussed abstention (particularly the consequences of the 1995 decision to abstain), but his judgment in these proceedings was not one of abstention.Instead the bankruptcy judge denied Zurn's motion to enforce the plan, a decision that is not abstention of any flavor. Indeed, it would have been possible to abstain in 2000 only after first reopening the bankruptcy. Judge Wedoff rescinded his initial act of reopening; the district court affirmed. That is incompatible with abstention. Moreover, by the time this dispute returned to the district judge, all proceedings in state court were over.

There was nothing to abstain in favor of-
-nor was there any pending bankruptcy
case that would proceed while the state
courts handled the matters from which the
federal court had abstained. The
questions on the table in 2000 concerned
the consequences of decisions the state
courts already had rendered. Because the
federal court was not asked in 2000 to
interfere with or take over a pending
state suit in order to value a claim in
bankruptcy, it also could not "abstain"
within the meaning of sec.1334(c). What
the court actually did was decline to
reopen a bankruptcy proceeding under
sec.350(b) and hold that the plan did not
need "enforcement" because no one had
departed from its provisions. Because
that decision ended the litigation in the
district court, we have jurisdiction
under 28 U.S.C. sec.158(d).

  Neither of the district judge's
substantive reasons is correct. The
Rooker-Feldman doctrine instantiates the
principle that only the Supreme Court of
the United States may modify a judgment
entered by a state court in civil litiga
tion. Zurn did not ask the federal court
to review or alter the state courts'
decisions; she argued, instead, that the
appellate decision has a particular legal
consequence (that Botti must make
restitution). That may be right or wrong,
but deciding whether it is right does not
transgress Rooker-Feldman. Federal law
does not undercut efforts to enforce
state judgments. Nor was it right to say
that Zurn's delay in attempting to
reinstate her suit obliterated her
opportunity to obtain restitution.
Illinois entertains independent actions
for restitution, when a judgment that has
been satisfied later is reversed. See
Liberty Mutual Insurance Co. v. Zambole,
141 Ill. App. 3d 803, 491 N.E.2d 132 (2d
Dist. 1986). Whether such an independent
suit would be appropriate in light of
other circumstances that are not in the
record (such as whether Zurn has made a
timely demand of Botti for restitution)
is something on which we offer no
comment. It is enough to say that Zurn
retains at least a potential for
restitution under state law.

  Although neither of the district judge's
reasons is convincing, its judgment
nonetheless is correct, for the reason
given by the bankruptcy judge. Zurn's

bankruptcy ended in 1996. The plan of reorganization has been fully implemented; there is nothing to "enforce" and no reason to reopen and alter the plan. Zurn's belief that anyone who has been a debtor in bankruptcy has eternal access to federal court for all disputes related in some way to the debts handled in the bankruptcy proceeding is incompatible not only with Pettibone but with many other cases, none of which Zurn discusses. E.g., Maytag Corp. v. Navistar International Transportation Corp., 219 F.3d 587, 590 (7th Cir. 2000); In re Xonics, Inc., 813 F.2d 127, 130-32 (7th Cir. 1987); In re Chicago, Rock Island & Pacific R.R., 794 F.2d 1182, 1186-87 (7th Cir. 1986). Suppose that a Chapter 13 plan called for a debtor to pay in full for a car, and thus retain title, and that after the confirmation of the plan a warranty dispute occurred. Would the bankruptcy judge be called on to determine whether the car's transmission had been repaired to the debtor's satisfaction? Certainly not; the federal role ended with the decision that the car would be paid for and retained rather than abandoned. Other disputes concerning the car belong to state tribunals. So too with leaseholds, we held in Chicago, Rock Island & Pacific. Zurn conceded at oral argument that disputes of this kind could not be brought back to federal court but argues that her dispute differs because the state litigation was ongoing at the time of the federal bankruptcy. But that was equally true in Pettibone, where the bankruptcy court abstained and left resolution of the parties' dispute to state tribunals. After the bankruptcy ended, the parties could not agree on the effect in the state cases of the automatic stay in bankruptcy; even though this dispute (unlike the Zurn-Botti imbroglio) was related to federal law, we held in Pettibone that jurisdiction once relinquished stays relinquished. When a bankruptcy court abstains and permits state courts to handle pending litigation, the parties must thereafter look to the state courts to handle their complete dispute and may not drag selected issues back to the bankruptcy forum years later.

Section 350(b) allows a district judge to reopen a bankruptcy proceeding, but use of that power is reserved for matters such as the correction of errors (see In

re Shondel, 950 F.2d 1301 (7th Cir. 1991)), amendments necessitated by unanticipated events that frustrate a plan's implementation, and the need to enforce the plan and discharge (see In re Bianucci, 4 F.3d 526 (7th Cir. 1993)). Reversal of a civil judgment that created a claim against the estate does not warrant reopening; reversal affects the amount of a given claim, not the plan's provisions for satisfying claims. Zurn's plan promised payment in full; and if events mean that "in full" is less than the debtor anticipated, still this does not call the plan itself into question. It just provides an occasion for the use of whatever remedies Zurn has under state law.

It is unfortunate that Botti's obduracy has prolonged this dispute. Lawyers should comply with their legal duties-- including the duty to make restitution identified in Buzz Barton & Associates-- rather than compel former clients to resort to still more litigation to vindicate their rights. Behavior such as Botti's brings the legal profession into disrepute. See also Dale M. v. Board of Education, 282 F.3d 984 (7th Cir. 2002). If litigation must continue, however, the right forum is state court, just as the bankruptcy judge concluded.

Affirmed

RIPPLE, Circuit Judge, dissenting.  The majority rests its decision on a ground that never was raised by the parties in this court or in the earlier stages of the litigation. Indeed, Mr. Botti conceded in his brief to this court that the bankruptcy court had the authority to reopen this case and properly had done so. Moreover, the majority's characterization of the bankruptcy court proceedings cannot be supported by the record. In my view, the appropriate course is to take the bankruptcy court at its word; it said that it was abstaining from exercising jurisdiction over the state cases just as it had done in 1996, leaving Ms. Zurn and Mr. Botti free to pursue their state remedies. Thus, the bankruptcy court abstained under 28 U.S.C. sec. 1334(c)(1), and we lack appellate jurisdiction to review such a decision under sec. 1334(d). I therefore

would dismiss this appeal for lack of appellate jurisdiction.

1.

The majority writes that "[t]he details of events in the bankruptcy court do not matter." Maj. Op. at 3. I respectfully disagree. Indeed, careful attention to the course of those proceedings reveals that the majority's characterization of them cannot be supported by the record.

On December 16, 1999, Ms. Zurn filed a motion to reopen her bankruptcy case under 11 U.S.C. sec. 350(b), which provides that "[a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. sec. 350(b). On January 10, 2000, Mr. Botti filed a memorandum in opposition to Ms. Zurn's motion to reopen. In that memorandum, Mr. Botti argued that the common-law doctrine of laches barred reopening because of Ms. Zurn's delay and the prejudice such a delay would cause Mr. Botti. On January 18, 2000, the bankruptcy court nevertheless granted Ms. Zurn's motion and reopened the bankruptcy. In doing so, the bankruptcy court considered the terms of sec. 350, as well as our decision in In re Bianucci, 4 F.3d 526 (7th Cir. 1993). It held that "[i]n this case I found nothing that indicates that there's prejudice to the Botti firm by any delay in actions involved in this case." January 11, 2000 Bankr. Tr. at 3. The court further stated that "the merits are a completely separate issue from the question of whether the case ought to be reopened. In the absence of the showing of any prejudice to the Botti firm . . . the case ought to be reopened pursuant to the authorities that were cited in the Bianucci case." Id. at 4-5. Thus ended the litigation over the question of reopening. Mr. Botti did not ask the bankruptcy court to reconsider its decision.

The parties then turned their attention to the merits of Ms. Zurn's request that the bankruptcy court order Mr. Botti to reimburse Ms. Zurn the funds she had paid earlier in compliance with her bankruptcy plan. Ms. Zurn characterized her motion for repayment as a motion to enforce the original Chapter 11 bankruptcy plan

confirmed in 1996. Under Ms. Zurn's reading of the plan, the bankruptcy court had the authority to order Mr. Botti to repay Ms. Zurn because the plan had contemplated continued state proceedings subsequent to the plan's confirmation. In reply, Mr. Botti filed a motion for abstention and remand. He urged the bankruptcy court to deny Ms. Zurn's motion for enforcement of the plan.

After the parties submitted further briefing on the merits, the bankruptcy court ordered Mr. Botti to repay Ms. Zurn for the funds she had paid to satisfy the state court judgment in the so-called "Zurn" case, in which Ms. Zurn, as plaintiff, alleged that Mr. Botti and his law firm had mishandled her divorce action. A default judgment dismissing the claims for failure to state a cause of action and imposing sanctions and attorneys' fees on Ms. Zurn had been entered by the trial court. However, that judgment subsequently was reversed by the Illinois Appellate Court, and Ms. Zurn therefore had been relieved of the obligation to pay that judgment.

By contrast, the bankruptcy court denied Ms. Zurn's motion for reimbursement with respect to the so-called "Botti" case. In this action, Mr. Botti and his law firm, as plaintiffs, had sought fees for representing Ms. Zurn in the divorce action. A default judgment had been entered in favor of Mr. Botti, awarding him the requested attorneys' fees. However, this judgment had been reversed on appeal.

The bankruptcy court had reached different results in the two requests for reimbursement because it determined the state appellate decision to be final in the Zurn case but non-final in the Botti case. As to the Zurn case, the bankruptcy court explained that the Illinois Appellate Court had determined that Ms. Zurn had stated a cause of action; therefore Botti's claim for sanctions could not stand. Because the Chapter 11 payment was only provisional as to this claim, reasoned the bankruptcy court, Ms. Zurn was entitled to a return of the amount that she had paid to Botti on this claim. Contrary to this characterization, in the Botti case, Mr. Botti's claim for attorneys' fees was still alive, and he ultimately might prevail and be entitled

to the funds Ms. Zurn had paid through the Chapter 11 plan. In sum, the bankruptcy court granted in part and denied in part Ms. Zurn's motion to enforce the plan and to order repayment of those funds.

After the bankruptcy court's oral ruling on March 16 and while that court was considering whether and at what rate to impose interest on the funds at issue, the DuPage County Court denied Ms. Zurn's motion to reinstate the Zurn case in that court. Mr. Botti brought a motion to amend the earlier order in light of this new development and what he submitted were manifest errors of law in the bankruptcy court's characterization of the Illinois Appellate Court's decision reversing the Zurn case. Ms. Zurn also brought a motion to reconsider with respect to the Botti case. As the bankruptcy court characterized the situation, "the legal issues raised by both parties are essentially of the same nature[:] that the court has misperceived the law that's applicable here and that to reconsider the order that's previously been entered." June 8, 2000 Bankr. Tr. at 2. Specifically, Mr. Botti maintained that the bankruptcy court's order incorrectly perceived the nature of Illinois Supreme Court Rule 137, which is analogous to Federal Rule of Civil Procedure 11, the provision under which Ms. Zurn had been sanctioned in the Zurn case. In its order, the bankruptcy court had reasoned that, because Ms. Zurn could no longer be sanctioned under Rule 137, the Appellate Court's ruling on that issue was final and the bankruptcy court could order Mr. Botti to repay Ms. Zurn.

Upon reconsideration, the bankruptcy court agreed with Mr. Botti that its earlier ruling was incorrect. "I have re viewed again the plan of reorganization of this case. . . . It does not say that there is any right to a refund in the event of a discharged judgment. It simply leaves the debtor in the position of pursuing her rights in state court." June 8, 2000 Bankr. Tr. at 4. The court continued: "I made a decision to abstain, and that determination is reflected in the plan of reorganization that was actually confirmed." Id. at 6. "And if we are talking about enforcing that plan of reorganization, I don't think that I can change my mind as to the appropriateness of abstention. All I can do in enforcing

the plan is to put its terms into effect. And I don't think that those terms would allow me to intrude into the state court proceedings." Id. at 6. At no time did the bankruptcy court suggest that its initial decision to reopen the case pursuant to sec. 350 was incorrect or that it had reconsidered that decision. Nor did either Ms. Zurn or Mr. Botti ask the court to reconsider. At issue on June 8 was Mr. Botti's motion asking the court to amend its earlier ruling in favor of Ms. Zurn on her motion to "enforce the plan," by which she meant ordering Mr. Botti to pay restitution. As the bankruptcy court had made clear in its decision to reopen the bankruptcy, the issue on June 8 was the "merits" question, distinct from the initial decision to reopen. In its June 8, 2000, ruling, the court decided to "grant Mr. Botti's motion [and] . . . deny enforcement of the plan." See id. at 7. In short, Ms. Zurn's motion to enforce the plan was the "merits" question, distinct from the "reopening" question. The bankruptcy court did not revisit its decision to reopen this bankruptcy.

2.

Mr. Botti also expressly waived any objection to the bankruptcy court's decision to reopen this case. In his brief to this court, Mr. Botti acknowledged that the bankruptcy court had "accepted jurisdiction by reopening the bankruptcy as it clearly had the authority to do under 11 U.S.C. sec. 350." Appellee's Br. at 12. Nowhere in his brief to this court does Mr. Botti suggest that he is challenging the bankruptcy court's decision to reopen Ms. Zurn's bankruptcy proceeding. When Mr. Botti opposed Ms. Zurn's motion to reopen in the bankruptcy court, he did so on the ground of the equitable doctrine of laches. He did not appeal the bankruptcy court's adverse ruling./1

3.

The majority states that "because the court had not been asked to interfere with or take over a pending suit, it also could not 'abstain.'" Maj. Op. at 4. Under the permissive abstention rule of sec. 1334(c)(1), however, a court may abstain "in the interest of justice, or in the interest of comity with State

courts or respect for State law." 11 U.S.C. sec. 1334(c)(1). Nowhere does the statute require that a state proceeding must be commenced before a bankruptcy court may invoke this provision. In contrast, sec. 1334(c)(2) requires a district court to abstain from hearing state law causes of action "related to a case under title 11 but not arising under title 11 or arising in a case under title 11 . . . if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction." 28 U.S.C. sec. 1334(c)(2). The presence of such a requirement in (c)(2) and its absence in (c)(1) indicates that a bankruptcy court may abstain under sec. 1334(c)(1) without pending state proceedings./2 The bankruptcy court here abstained in favor of whatever state remedies Ms. Zurn was entitled to seek.

The bankruptcy court's decision was a decision to abstain from exercising jurisdiction over the Zurn and Botti cases. The bankruptcy court had abstained in 1995 because, inter alia, the two cases were dominated by uncertain questions of state law. It abstained this time because the original plan did not permit Ms. Zurn to return to bankruptcy court to vindicate only a portion of her state law rights; to enforce the plan was to persist in abstaining./3

4.

The bankruptcy court's record cannot be read so as to conclude that the bankruptcy court's decision on June 8, 2000, reversed its original decision to reopen the case. The parties litigated the reopening issue and then proceeded to the merits. We are asked to review the bankruptcy court's decision on the merits. That decision was to abstain from exercising jurisdiction over the state cases and we are barred from reviewing such decisions by 28 U.S.C. sec. 1334(d). There is no reason to reach out and decide unnecessarily an issue not addressed by all of the parties and other courts in this case. I would dismiss this appeal for lack of appellate jurisdiction and, therefore, I respectfully dissent.

FOOTNOTES

/1 The issue that the majority chooses to decide without the assistance of briefs or the argument

of counsel is a difficult one whose resolution is not clear-cut. Although the majority chides the parties for not discussing Pettibone Corp. v. Easley, 935 F.2d 120 (7th Cir. 1991), the majority fails to reckon sufficiently with the reasoning of In re Bianucci, 4 F.3d 526 (7th Cir. 1993) and In re Shondel, 950 F.2d 1301 (7th Cir. 1991), which both take a more permissive approach to reopening under sec.350(b) than that taken by the majority here. In re Shondel held that the bankruptcy court acted properly in reopening the bankruptcy case to modify a permanent injunction issued as part of the original plan. See In re Shondel, 950 F.2d at 1304. In re Bianucci held that the bankruptcy court properly declined to reopen a bankruptcy case two years after it was closed to determine the status of a lien, but made clear that the decision whether to reopen a bankruptcy decree rests within the sound discretion of the bankruptcy court. See In re Bianucci, 4 F.3d at 527-28. Denial of the motion to reopen in In re Bianucci was proper because the nonmoving party would be prejudiced by the act of reopening itself. See id. at 528. Indeed, both Bianucci and Shondel emphasized that the decision whether to reopen a bankruptcy is left to the broad discretion of the bankruptcy court. See In re Bianucci, 4 F.3d at 528; In re Shondel, 950 F.2d at 1304; see also 3 Lawrence P. King, et al., Collier on Bankruptcy, para. 350.03 (15th ed. 2002). Given the importance of the question, a case in which the issue has neither been raised nor briefed is an inappropriate vehicle for a sweeping assertion that "[r]eversal of a civil judgment that created a claim against the estate does not warrant reopening." Maj. Op. at 6. It would be advisable to decide that issue in case in which it is raised and we have the benefit of briefing and oral argument from the parties.

/2 There are other abstention doctrines that do not require pending state proceedings for their application. For example, "[f]ederal court abstention is required when state law is uncertain and a state court's clarification of state law might make a federal court's constitutional ruling unnecessary." Erwin Chemerinsky, Federal Jurisdiction, at 737 (3d ed. 1999); see also Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 716-23 (1996) (describing the various formulations of the abstention doctrine). Pullman abstention thus applies even in the absence of a pending state action; it applies in anticipation of state court action. So too in this case. The bankruptcy court abstained in anticipation of Ms. Zurn's bringing a future claim in state court seeking restitution.

/3 The majority contends that "Judge Wedoff rescinded his initial act of reopening . . . . That is

incompatible with abstention." Maj. Op. at 4. It further states that the judgment of the bankruptcy court was to deny "Zurn's motion to enforce the plan, a decision that is not abstention of any flavor." Maj. Op. at 4. In the majority's view, then, the bankruptcy court's judgment simultaneously denied Ms. Zurn's motion to enforce the plan and revoked the court's decision to reopen. In my view, the best way to view the bankruptcy court's judgment is that it denied Ms. Zurn's motion to enforce the plan because it was abstaining in conformity with the dictates of the 1996 plan. The bankruptcy court denied Ms. Zurn's motion not because it thought that she did not deserve restitution but because it believed that it was compelled to abstain because of the 1996 plan. That determination is a decision to abstain within the meaning of 28 U.S.C. sec. 1334(c).

The bankruptcy court made what I believe to be a sound distinction between the question whether to reopen the bankruptcy "for cause" under sec. 350(b) and the merits question, whether Ms. Zurn was entitled to the relief she sought. The court was clear that what was at issue on June 8 was the "merits" question, whether Mr. Botti was violating the terms of the plan by refusing to return the funds to Ms. Zurn. The majority's view seems to be that the merits question and the reopening question are one in the same, that in order for a bankruptcy court to reopen a bankruptcy, the party seeking such action must demonstrate that he is also entitled to relief. This is an unwarranted narrowing of a bankruptcy court's broad discretion to reopen a bankruptcy under sec. 350(b).