**In re Burt and Pamala BARTON, Debtors.**

**No. 02 B 12199.**

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

Nov. 8, 2006.

John C. Renzi, June Prodehl & Renzi LLC, for Debtor.

## MEMORANDUM OPINION

BRUCE W. BLACK, Bankruptcy Judge.

Before the court is the Debtors' motion seeking sanctions against the County Clerk of Will County, Illinois, for violating the automatic stay imposed by section 362 of the Bankruptcy Code.[1] This Memorandum Opinion explains why the motion is being granted.

### Jurisdiction

Jurisdiction lies pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. Venue is proper under 28 U.S.C. § 1409. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

### General Background and Facts

The Debtors' motion alleges that the County Clerk violated the stay "through the continued accrual of interest and collection actions of the Clerk, which include, *inter alia,* the setting of the matter for a tax sale."[2] The motion seeks: (1) a declaration that the County Clerk's actions violated the automatic stay; (2) an injunction[3] prohibiting the tax sale and any further collection activities; and (3) compensatory damages and attorney fees under section 362(k).

The Debtors' property taxes for the year 2001 were included in their confirmed chapter 13 plan and have been paid in full according to the plan. Despite receiving payment under the plan, the County Clerk has declared interest and costs[4] due regarding these taxes and has scheduled a tax sale of the Debtors' property.

In response to the Debtors' motion, the State's Attorney of Will County moved to dismiss the motion for failure to state a claim. The motion to dismiss was previously denied, and the Debtors' motion was granted in part. This Memorandum Opinion supplements the reasons stated in court for those rulings.

The material facts are not in dispute. On March 27, 2002, the Debtors filed their chapter 13 bankruptcy petition and listed the Will County Treasurer on Schedule E as the holder of a priority claim for property taxes in the amount of $1,400. This amount was the amount the Debtors had been billed for the 2001 property taxes on their residence. Under Illinois law,[5] this amount became a lien on the property as of January 1, 2001, but it was not payable until after the bankruptcy case was filed.

The clerk of the Bankruptcy Court sent notice of the filing to the Will County Treasurer on April 11, 2002. The notice listed, among other information, June 28, 2002 as the date of the hearing on the

---

1. 11 U.S.C. § 101 *ff.* Any reference to "section" is a reference to the Bankruptcy Code unless another reference is stated.

2. Debtors' Motion for Violation of Automatic Stay (Debtors' Motion), p. 2, ¶ A.

3. Pursuant to Fed. R. Bankr.Pro. 7001(7) a request for an injunction should be filed as an adversary proceeding. By not objecting, Will County has waived its right in that regard.

4. The "Statement of Amounts" attached to Will County's motion to dismiss includes these amounts: back taxes of $1,400.26, 12%

interest of $168.03, publishing fee of $10.00, late payment penalty of $0.00, back interest and costs of $628.61, and statutory fee of $37.00, for a total of $2,243.90. How the "back interest and costs" number was computed is not explained. Even though it is nearly four times the amount for 12% interest, the court has refrained from concluding that it includes penalties.

5. *See* the Illinois Property Tax Code, 35 ILCS 200/1–1 *ff.* For a thorough description if Illinois property tax procedures, *see In re Bates,* 270 B.R. 455, 459–60 (Bankr.N.D.Ill. 2001).

confirmation of the proposed chapter 13 plan. Will County took no action in the bankruptcy court in response to the notice.

On May 30, 2002, the Debtors filed a proof of claim in their bankruptcy case on behalf of the Will County Treasurer for the amount of the 2001 property taxes on their residence. Notice of the filing and a copy of the proof of claim were served on the chapter 13 trustee and the Will County Treasurer. The proof of claim designates Will County's claim as an unsecured priority claim under section 507(a)(8). That same day, the Debtors filed an amended plan which proposed in section E–6 to pay allowed priority claims (other than the Debtors' attorney fees) in the amount of $1,400. Section G of the plan stated that the trustee would make payments for the 2001 taxes to the Will County Treasurer and that the Debtors would file a claim on behalf of Will County.

Will County did not object to the claim filed on its behalf, nor to confirmation of the chapter 13 plan which proposed to pay the amount of the claim in full, without interest. The amended plan was confirmed on June 28, 2002.

On January 30, 2005, the chapter 13 trustee paid the last payment due Will County under the confirmed plan. On December 30, 2005, the creditor holding the mortgage on the real property moved to lift the automatic stay, alleging: "The 2001 real estate property taxes were forfeited and have not been paid. Approximately $2,243.90 is needed to redeem said sold [sic] taxes through January 31, 2006."[6]

The record does not disclose exactly what transpired after confirmation of the plan which precipitated the creditor's motion to lift the stay. The parties agree, however, that Will County has refused to accept the payments called for by the plan, and made by the Debtors through the trustee, as payment in full for the Debtors' 2001 property taxes. Instead, the County Clerk has treated the taxes as delinquent and has implemented the Illinois statutory scheme of assessing interest and costs as a lien against the property, pursuant to the Illinois Property Tax Code, 35 ILCS 200/1–1 ff.

The Debtors argue that Will County's refusal to accept the amount paid under the plan as payment in full is an attempt "to collect additional funds outside of the pending bankruptcy for a debt that arose pre-filing."[7] The Debtors claim that Will County—having received notice of the bankruptcy and of the claim filed on its behalf, and having failed to object to the claim or to confirmation of the plan—is now bound by the terms of the confirmed chapter 13 plan. Therefore, according to the Debtors, Will County "has no legal basis to assert additional funds are due for the tax year 2001 and the scheduling of the real estate for tax sale constitutes an attempt to compel payment by Debtors" in violation of the automatic stay.[8]

Will County's response to the Debtors' motion asserts two defenses. The principal argument is that the charge of violating the automatic stay "only applies to an in personam claim," whereas Will County's "charging of post petition interest on unpaid prepetition taxes and cost [sic] on the unpaid property taxes of [the Debtors] is an in rem action."[9] Because the additional charges are assessed against the proper-

---

6. Motion to Modify the Automatic Stay filed by Green Tree Servicing LLC, p. 1, ¶ 5.

7. Debtors' Motion, p. 1, ¶ 8.

8. *Id.* at p. 2, ¶ 10.

9. Motion to Dismiss Debtor's Motion for Violation of the Automatic Stay Against the Will County Clerk (Will County's Motion), p. 1, ¶ 2.

ty itself, rather than against the Debtors personally, Will County argues that its actions do not violate the automatic stay. Will County's secondary argument, relying on *In re Klefstad*, 95 B.R. 622 (Bankr. W.D.Wis.1988), is that section 362(b)(3) excludes its actions from the reach of the automatic stay.[10]

## Discussion

To resolve this dispute, four issues will be addressed:

(1) Whether Will County was afforded sufficient notice of the bankruptcy and the claim the Debtors filed on its behalf;

(2) Whether the distinction between *in rem* and *in personam* proceedings is sufficient to remove Will County's actions from the reach of the automatic stay;

(3) Whether section 362(b)(3) authorizes Will County's actions; and

(4) Whether Will County is bound by the terms of the confirmed plan.

An overview of the procedures under chapter 13 of the Code will clarify the discussion of the discrete issues. When a bankruptcy petition is filed, an automatic stay under section 362 goes into effect immediately[11] preventing creditors from taking any steps to collect debts which arose before the petition was filed. This stay of collection proceedings continues until the case is dismissed or until a creditor successfully moves to modify the stay to allow the creditor to pursue collection actions. As long as a case under chapter 13 remains pending, the stay continues, in the absence of a motion to modify it. Even after confirmation of a chapter 13 plan of reorganization, the stay remains in effect. When the plan is fully executed and the case is closed, the stay terminates, but it is replaced by the discharge injunction which prohibits collection of discharged debts. Section 524(a)(2).

The stay under section 362 prohibits "any act to create, perfect, or enforce" liens against property of the bankruptcy estate and property of the debtor. Section 362(a)(4) and(5). Section 362(b) contains many exceptions to the automatic stay, most of which do not apply here, but one of which will be discussed in detail below.[12] The stay under section 362 is called automatic because it takes effect on the filing of the bankruptcy petition, without any specific request by the debtor. Ordinarily, its effectiveness is not dependant on the creditor having knowledge of the bankruptcy. This automatic quality of the stay notwithstanding, the question of notice is fundamental to the bankruptcy process.

### (1) Sufficiency of Notice

Will County has not raised the issue of notice, but because it is fundamental in all bankruptcy cases, it should be addressed. A creditor is entitled to the fundamental due process requirements of notice and the right to be heard in any bankruptcy proceeding which is to be accorded finality. Notice of an order for relief in a bankruptcy case must be reasonably calculated to afford interested parties the opportunity to protect their rights and property interests. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). To ensure proper notice, the Bankruptcy Code requires all voluntary debtors to file

---

10. *Id.* at p. 1, ¶ 3.

11. This section was amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (Pub.L.109–8) (BAPCPA) so that the stay is not always automatic. The amendments relate to serial filers and have no effect here.

12. See section (3).

a list containing the name and address of each creditor with the petition for relief. Section 521(a)(1).[13] Section 342 and Federal Rule of Bankruptcy Procedure 2002 require the clerk of the bankruptcy court to send notice of the order for relief to the debtor, the trustee, all creditors, and indenture trustees. The notices are to be sent to the addresses designated by the debtor or by the creditor, whichever designation is later. Section 342(a), Fed. R. Bankr.Proc.2002(f) and (g)(2).

■ The court's docket in this case reveals that the notice sent by the clerk of the bankruptcy court to the creditors, including the Will County Treasurer,[14] contained all of the information required under the Bankruptcy Code, including the date, time, and place of both the meeting of creditors and the chapter 13 plan confirmation hearing. On the back of the notice, there was a section titled "Explanations" setting out various creditor actions against debtors prohibited by section 362. A blank proof of claim form with instructions for completing the form and filing it with the court was mailed with the notice. In addition, it is undisputed that the Debtors served the Will County Treasurer with a copy of the proof of claim filed on behalf of Will County and that this was done well before the confirmation hearing.

On this record the court concludes that the notice to Will County complied with the provisions of the Bankruptcy Code and with the requirements of due process.

### (2) In Rem Versus In Personam and The Automatic Stay

■ Will County's principal defense is that it has not violated the automatic stay imposed by section 362 because its assessment of interest and costs as a lien against the Debtors' property was an *in rem* action against the property and not an *in personam* action against the Debtors themselves.[15] This argument is answered by the United States Supreme Court's decision in *Johnson v. Home State Bank,* 501 U.S. 78, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991).

In *Johnson* the Supreme Court approved the so-called "Chapter 20" bankruptcy case while holding that a debtor can "include a mortgage lien in a Chapter 13 bankruptcy reorganization plan once the personal obligation secured by the mortgaged property has been discharged in a Chapter 7 proceeding." *Id.* at 80, 111 S.Ct. 2150.

After reviewing the facts, the Court in *Johnson* noted that the reorganization remedy provided by chapter 13 allows debtors to modify the rights of holders of secured claims, under section 1322(b)(2).[16]

13. The specific language, but not the substance, of this section was altered by BAPCPA.

14. The notice was properly sent to the attention of the Will County Treasurer, the county officer who had sent the Debtors their property tax bill, at the address listed by the Debtors on their schedules and creditor matrix. Had this been an adversary proceeding, service on the Will County Treasurer would not have been appropriate pursuant to Fed. R. Civ. Pro. 7004(b)(6) and the Illinois Code of Civil Procedure which requires service upon a county to be served on the chairperson of the

county board or the county clerk. 735 ILCS 5/2–21.

15. Will County's Motion p.1–2 ¶ 3.

16. Will County might argue that section 1322(b)(2) does not apply here because its terms exclude from its operation "a claim secured only by a security interest in real property that is the debtor's principal residence." While the parties agree that the property at issue is the Debtors' residence, the quoted language does not apply here because Will County's tax lien is not a "security interest" as that term is defined in section 101(1). *See Rankin v. DeSarno,* 89 F.3d 1123, 1127–

The opinion then states the issue as follows:

> The issue in this case is whether a mortgage lien that secures an obligation for which a debtor's personal liability has been discharged in a Chapter 7 liquidation is a "claim" subject to inclusion in an approved Chapter13 reorganization plan.

*Id.* at 82, 111 S.Ct. 2150. In deciding that the *in rem* lien was a "claim" which could be modified by a chapter 13 plan, the Court looked at three sections of the Code. First, it looked at the definition of "claim" in section 101(5), which states:

> The term "claim" means—
>
> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
>
> (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

The Court noted that it had previously held, in *Penn. Dept. Of Public Welfare v. Davenport*, 495 U.S. 552, 559, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990), that the language in section 101(5) disclosed the intent of Congress to adopt the broadest possible definition of "claim," and "that 'the right to payment'[means] nothing more nor less than an enforceable obligation...." The Court then reached the logical conclusion:

> Even after the debtor's personal obligations have been extinguished, the mortgage holder still retains a "right to payment" in the form of its right to the proceeds from the sale of the debtor's property. Alternatively, the creditor's surviving right to foreclose on the mortgage can be viewed as a "right to an equitable remedy" for the debtor's default on the underlying obligation. Either way, there can be no doubt that the surviving mortgage interest corresponds to an "enforceable obligation" of the debtor.

*Id.* at 84, 111 S.Ct. 2150.

Second, the Court in *Johnson* supported its conclusion that an *in rem* right was a "claim" by examining section 502(b)(1). After quoting the statutory language, the Court stated:

> In other words, the court must allow the claim if it is enforceable against *either* the debtor *or* his property. Thus, § 502(b)(1) contemplates circumstances in which a "claim," like the mortgage lien that passes through a Chapter 7 proceeding, may consist of nothing more than an obligation enforceable against the debtor's property.

*Id.* at 85, 111 S.Ct. 2150 (emphasis in original).

Third, the Court looked at section 102(2) and concluded:

> A fair reading of § 102(2) is that a creditor who, like the Bank in this case, has a claim enforceable only against the debtor's property nonetheless has a "claim against the debtor" for purposes of the Code.

*Id.*

The logic of the *Johnson* analysis is compelling in this case. For analytical purposes, the *in rem* nature of the mortgage lien in *Johnson* is identical to the *in rem* nature of Will County's tax lien in this case. Similarly, there is no difference between the mortgage holder's right to the

28 (3rd Cir.1996) and *In re Bates,* 270 B.R. 455, 465 fn. 6 (Bankr.N.D.Ill.2001).

payment from the proceeds of the foreclosure sale and Will County's right to payment from the proceeds of the tax sale. Finally, because this is the Debtors' first bankruptcy, there is no parallel argument to the *Johnson* lender's policy argument against successive filings. The conclusion is clear: just as the *in rem* lien of the lender in *Johnson* was a claim that could be modified through chapter 13, the *in rem* lien of Will County is a claim that can be modified through chapter 13.[17]

*(3) The Significance of Section 362(b)(3)*

■ Will County's second argument, citing *In re Klefstad*, 95 B.R. 622, is that "[s]ection 362(b)(3) is an exception to the Automatic Stay where property taxes are not stayed from being a lien on the property of the estate."[18] As noted above, section 362(a) prohibits, among other things, "any act to obtain possession of" property of the estate (subsection (3)), "any act to create, perfect, or enforce any lien" against property of the bankruptcy estate (subsection (4)), or against property of the debtor to the extent that the lien secures a prepetition claim (subsection (5)).

Section 362(b)(3), relied on by Will County, states as follows:

(b) The filing of a petition under . . . this title . . . does not operate as a stay—

(3) . . . of any act to perfect, or to maintain or continue the perfection of, an interest in property . . .

Will County's reliance on *Klefstad* for the meaning of this provision is misplaced. In that case the court was faced with objections by chapter 11 debtors to claims

by counties seeking payment for "postpetition real estate tax *penalties*." 95 B.R. at 624 (emphasis added). The court disallowed the penalties as part of the counties' secured claims, but did allow them as administrative expenses under section 507(a)(7). *Id.* at 625–26. Although *Klefstad* is inapposite here, in a lengthy footnote the opinion does contain the language asserted by Will County: ". . . real estate taxes are not stayed from being a lien on property of the estate." *Id.* at fn. 5. That *dicta,* however, has no bearing on the resolution of this case. The Debtors do not contend that unpaid Illinois property taxes are not a lien on their property. What they do contend is that Will County has done two things improperly. First, by improperly assessing additional amounts owing for the 2001 taxes, Will County is *creating* a new, or additional lien. Second, by scheduling the tax sale, Will County is taking action to *enforce* the lien for prepetition taxes in order to *obtain possession* of their property. The Debtors argue that these actions go far beyond mere perfection of a lien.

In *In re Bates*, 270 B.R. 455 (Bankr. N.D.Ill.2001), Judge Wedoff contrasted "perfection" of a lien with enforcement:

. . . enforcement of a security interest in property by obtaining a deed to the property is not an act to "perfect" a property interest. "Perfection," although not defined by the Bankruptcy Code, has a well accepted meaning in the law of secured transactions—it refers to the steps necessary to obtain

---

17. In *In re Commings*, 297 B.R. 701 (Bankr. N.D.Ill.2003), Judge Goldgar reached the same conclusion. The facts of this case allow the court to refrain from weighing in on a significant disagreement among other judges in this district regarding the rights of Illinois tax sale purchasers in bankruptcy court.

18. Will County's Motion, p. 1, ¶ 3.

Compare *In re Bates*, 270 B.R. 455 (Bankr. N.D.Ill.2001) *with In re Murray*, 276 B.R. 869 (Bankr.N.D.Ill.2002) and *Blue v. Town of Lake Building Corp. (In re Blue)*, 247 B.R. 748 (Bankr.N.D.Ill.2000).

priority over other creditors claiming an interest in the collateral.

*Id.* at 468. He concludes that section "362(b)(3) provides no exception to the automatic stay for the issuance of tax deeds." *Id.* Will County's actions in continuing to assess interest and in scheduling a tax sale fare no better. The assessment of interest is a step in the creation of a lien, and a tax sale is a step in the enforcement process. Accordingly, section 362(b)(3) affords no defense to Will County in this case.

### (4) Binding Effect of the Chapter 13 Plan

■ Having established that: (1) Will County received sufficient notice of the bankruptcy case; (2) Will County's tax lien is a claim which can be modified by the Debtors' chapter 13 loan; and (3) section 362(b)(3) offers Will County no defense; the remaining issue is whether the Debtors' confirmed plan does indeed modify Will County's rights to enforce its tax lien.

■ The general rule on the binding effect of chapter 13 plans is stated in *In re Harvey*, 213 F.3d 318, 321 (7th Cir.2000):

It is a well-established principle of bankruptcy law that a party with adequate notice of a bankruptcy proceeding cannot ordinarily attack a confirmed plan. 11 U.S.C. § 1327(a) ... The reason for this is simple and mirrors the general justification for *res judicata* principles-after the affected parties have an opportunity to present their arguments and claims, it is cumbersome and inefficient to allow those same parties to revisit or recharacterize the identical problems in a subsequent proceeding.

This is especially true in the bankruptcy context, where a confirmed plan acts more or less like a court-approved contract or consent decree that binds both the debtor and all the creditors. Bringing the various creditors' interests

to the table once is difficult enough; permitting one of the creditors to launch a later attack on a confirmed plan would destroy the balance of interests created in the initial proceedings.

(Case citations omitted). *See also In re Commings*, 297 B.R. 701, 709 (Bankr. N.D.Ill.2003). Will County simply has not presented a persuasive argument for being excepted from the general rule.

The confirmed plan clearly purports to determine Will County's rights regarding the 2001 property taxes. The plan listed $1,400 as the only amount in section E–6, which deals with priority claims. Section G, entitled "Special Provisions," states, in pertinent part:

Partial payments shall be paid to Will County Treasurer for 1st and 2nd Installment of 2001 Real Estate taxes as priority claim per E.6 supra. Debtor shall file claim for county in accordance with tax bill. Trustee to make distributions pursuant to claim so filed.

Will County's strongest argument that these provisions of the plan should not be effective stems from the improper characterization of its interest by the Debtors in their schedules and in the claim they filed on Will County's behalf. Under Illinois law unpaid property taxes result in a lien against the property on which they have been assessed. 35 ILCS 200/21–75. Under section 506(a) such an interest is a secured claim. Therefore, Will County should have been scheduled as a secured creditor on Schedule D, and the claim filed on its behalf should have been fully secured by the value of the real estate, thereby entitling Will County to interest on its claim. *See* sections 506(b) and 1325(a)(5)(B)(ii). Instead, the Debtors erroneously listed Will County as a creditor holding an unsecured priority claim on Schedule E. When Will County failed to

file a claim for the unpaid taxes, the Debtors filed a claim on its behalf, again designating the unpaid property tax claim as an unsecured priority claim. As an unsecured priority claim, Will County's claim would be paid in full, but without interest. The priority for taxes is reserved for unsecured claims under section 507(a)(8). Notwithstanding this error on the part of the Debtors, Will County raised no objection to the claim filed on its behalf or to the confirmation of the plan, both of which listed $1400 as the amount to be paid on the outstanding 2001 real estate taxes.

After the plan was confirmed, Will County still had a remedy to correct the Debtors' improper treatment of its claim, namely, a motion to alter or amend the confirmation order under Fed. R. Bankr. Proc. 9024. Had such a motion been timely filed, there is little doubt the confirmation order would have been amended to allow Will County interest on its secured claim. Now, more than four years after the plan was confirmed and over a year after the trustee made the final payment for the taxes under the plan, Will County has still not moved to amend the order or to modify the automatic stay. Any attempt to do so now would be untimely. In the absence of a motion to amend the confirmation order or an appeal from it, the confirmed plan must be complied with. The principles of finality expressed in *In re Harvey* must prevail.

Instead of recognizing the binding nature of the plan under section 1327(a), Will County chose to stay out of the bankruptcy court and to proceed as though no bankruptcy case had been filed. As we have seen, its conduct thereafter was both inconsistent with the plan and a violation of the automatic stay under section 362.

### Conclusion

Accordingly, based on the foregoing, the court finds Will County to be:

1) bound by the terms of the plan as confirmed by this court;
2) in contempt of this court for its actions in violation of the automatic stay and the confirmation order; and
3) subject to sanctions under section 362(k)for its contempt.

Therefore, this court's prior orders denying Will County's motion to dismiss and granting in part the Debtors' motion are hereby REAFFIRMED. In addition, a permanent INJUNCTION will be entered prohibiting Will County from taking any actions to collect more than the amount in the Debtors' plan for the 2001 property taxes on the Debtors' residence and from otherwise pursuing any other remedy therefor under the Illinois Property Tax Code and any other authority. Finally, a sanctions order will be entered requiring Will County to pay the Debtors' attorneys fees for this proceeding.

This opinion will serve as findings of fact and conclusions of law pursuant to Fed. R. Bankr.Pro. 7052, and separate orders will be entered.