In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-4288

JAMES A. REDMOND,

*Plaintiff-Appellant,*

*v.*

FIFTH THIRD BANK, f/k/a PINNACLE BANK,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 08-cv-00961—**Blanche M. Manning**, *Judge.*

DECIDED[1] OCTOBER 20, 2010

Before EASTERBROOK, *Chief Judge*, and KANNE and
SYKES, *Circuit Judges*.

SYKES, *Circuit Judge.*  In 1996 James Redmond defaulted
on his home mortgage and filed for Chapter 13

---

[1] Oral argument was scheduled for September 25, 2009.
Redmond filed an emergency motion to reschedule argument
on September 24, 2009. We vacated oral argument and
now decide the case on the briefs. *See* FED. R. APP. P. 34(B);
7TH CIR. R. 34(e).

bankruptcy protection against his lender Pinnacle Bank ("Pinnacle"), now known as Fifth Third Bank. The bankruptcy court entered an Agreed Order, pursuant to which Redmond made monthly payments and owed a "balloon payment" for the balance of the mortgage on April 1, 1998. To obtain financing for this balloon payment, Redmond requested a payoff letter from Pinnacle detailing his debt obligations. Redmond disputed the charges in the payoff letter and subsequently failed to secure a loan to cover the payment. He then defaulted for a second time, and Pinnacle initiated state foreclosure proceedings. Redmond moved to reopen his bankruptcy case in 2005, four years after it had been closed and three weeks before trial in the state foreclosure suit. He contended that the charges Pinnacle was seeking in the foreclosure suit were in violation of the bankruptcy court's orders and the automatic stay. The bankruptcy court denied the motion, and a year later Redmond filed a second motion to reopen along with a motion for sanctions against Pinnacle for violating the terms of the bankruptcy plan. These motions, too, were denied. The case shuttled back and forth between the district court and the bankruptcy court, and when the denial of reopening was finally affirmed, Redmond appealed to this court.

We affirm. Bankruptcy judges are given broad discretion to reopen closed bankruptcy cases, and we see no abuse of discretion here. The bankruptcy judge declined to reopen on multiple appropriate grounds: The motion was not timely, the state court was an appropriate forum to litigate Redmond's potential claims, and his bank-

ruptcy arguments were in any event meritless. Further, Redmond was not denied a fair hearing; the bankruptcy judge gave him ample opportunity to present his claims.

## I. Background

In February 1996 James Redmond defaulted on his home mortgage, and Pinnacle initiated foreclosure proceedings. Redmond staved off foreclosure by filing for Chapter 13 bankruptcy protection. The bankruptcy judge entered an Agreed Order, which reduced Pinnacle's arrearage, stayed foreclosure proceedings, and required Redmond to make monthly payments on the mortgage in addition to a final balloon payment on April 1, 1998.

As the April 1 deadline approached, Redmond sought to refinance his mortgage to cover the upcoming balloon payment. Redmond requested a payoff letter from Pinnacle so that he could close on the refinance loan in time to pay the balloon note. Pinnacle provided two payoff letters—the second containing a higher payoff amount than the first. Redmond demanded an explanation of the charges; he claims that due to Pinnacle's failure to explain the difference, he could not refinance his mortgage. Redmond then failed to make the balloon payment and defaulted on the mortgage for a second time, after which Pinnacle initiated a second foreclosure suit in state court. (Pinnacle contended, and the bankruptcy judge agreed, that the automatic stay as to Pinnacle's mortgage lien dissolved when Redmond did not

make the balloon payment.[2]) Redmond received a bank-ruptcy discharge in May 1999, and his case was closed in May 2001.

After seven years of litigation, the state foreclosure proceedings were slated for trial on July 18, 2005. On June 30, 2005, three weeks before the trial date and four years after his bankruptcy case had been closed, Redmond filed a motion to reopen the bankruptcy proceedings. Redmond claimed that Pinnacle was seeking through its payoff letters and the foreclosure action to recover fees above what it was owed under the Agreed Order and the bankruptcy plan. On July 12, 2005, Redmond's counsel made an appearance to argue the motion, and the bankruptcy judge denied it on the ground that the state court could properly entertain his claims.

Meanwhile, Pinnacle filed a pleading in the state-court foreclosure proceeding in which it disclosed the specific sums at issue in the 1998 payoff letters. This prompted Redmond to file a second motion to reopen in 2006—almost a year after the court had denied his first one. This time he included a request for sanctions for alleged violations of the bankruptcy court's orders. At a June 29, 2006 hearing, the bankruptcy court denied the

---

[2] Redmond argued that the automatic stay could not have been lifted at the time the balloon payment was due on April 1, 1998, because Pinnacle gave him no notice. The bankruptcy court rejected this argument, concluding that under the Agreed Order, the stay dissolved automatically and did not require notice.

motion, finding that Redmond's dispute with Pinnacle over the amount owed under the mortgage did not implicate any bankruptcy order. Redmond appealed, and the district court reversed and remanded with instructions to consider whether Pinnacle had improperly sought payment of prepetition debts prohibited by the Agreed Order.[3] On remand the bankruptcy court again denied the motion.[4] The judge held that (1) the motion was untimely; (2) any remaining issues could be resolved in the state-court proceedings; and (3) Redmond's bankruptcy arguments were facially meritless.

Redmond again appealed, claiming that the bankruptcy judge had not followed the district court's remand instructions.[5] This time the district court affirmed the

---

[3] Before issuing its remand order, the district court dismissed Redmond's appeal for lack of prosecution and then sanctioned Redmond's counsel for needlessly causing Pinnacle to litigate his motion to vacate the dismissal. The district judge later reinstated the appeal.

[4] The bankruptcy court continued a hearing three times before denying the motion to reopen. The docket does not indicate why the court continued the hearing three times, but during this intervening time period, one of Redmond's attorneys withdrew at his request, which may have accounted for some of the delay.

[5] On appeal the district judge admonished both parties that the failure to file timely briefs would result in dismissal and requests for extensions of time would be strongly disfavored. Redmond then filed (and was granted) two extensions of time

(continued...)

bankruptcy court's order denying the motion to re-open. Redmond appealed, and on the eve of oral argument before this court, he filed an "emergency" motion to reschedule the argument. We vacated the oral argument and took the case on the briefs.

## II. Discussion

Redmond challenges the bankruptcy court's denial of his second motion to reopen his closed bankruptcy case. The decision to reopen a bankruptcy case is within the broad discretion of the bankruptcy court. *In re Bianucci*, 4 F.3d 526, 528 (7th Cir. 1993). A bankruptcy court may, for example, reopen a case for "the correction of errors, amendments necessitated by unanticipated events that frustrate a plan's implementation, and the need to enforce the plan and discharge." *In re Zurn*, 290 F.3d 861, 864 (7th Cir. 2002) (citations omitted). Although we review de novo the district court's affirmance of the bankruptcy court's order denying the motion, the bankruptcy court's order itself is entitled to deference; the denial of a motion to reopen a closed bankruptcy case is reviewed for abuse of discretion. *See In re Ingersoll, Inc.*, 562 F.3d 856, 863 (7th Cir. 2009) ("We review a district court's decision to affirm the bankruptcy court *de novo*, which allows us to assess the bankruptcy

---

[5] (...continued)
to file his initial brief. Despite these extensions, Redmond filed his brief four days late, and it was twelve pages over the page limit.

court's judgment anew, employing the same standard of review the district court itself used." (citations omitted)). A bankruptcy judge may consider a number of nonexclusive factors in determining whether to reopen, including (1) the length of time that the case has been closed; (2) whether the debtor would be entitled to relief if the case were reopened; and (3) the availability of nonbankruptcy courts, such as state courts, to entertain the claims. *See In re Antonious*, 373 B.R. 400, 405-06 (Bankr. E.D. Pa. 2004).

As a threshold matter, Redmond's contention that the bankruptcy court did not afford him a full and fair hearing is without basis in law or fact. As a matter of law, there is no question that bankruptcy courts may rule on motions to reopen without a hearing. *See In re Jones*, 261 B.R. 479, 483 (Bankr. N.D. Ala. 2001) (denying a motion to reopen without a hearing). Further, § 350(b) of the Bankruptcy Code, which governs the closing and reopening of cases, makes no provision for hearings or other procedures available to debtors. 11 U.S.C. § 350(b) (2006). Even though Redmond is not entitled to a hearing as a matter of law, the record is clear that he was given ample opportunity to present his claims. The bankruptcy judge held a hearing before denying each of Redmond's motions to reopen. After the district judge's remand order, the bankruptcy court held another hearing (after three continuances) before issuing a thorough opinion denying the motion. Given this procedural history, Redmond's argument that he was not given a fair hearing is untenable. He had over four years and three chances to persuade the bankruptcy judge to reopen his case—and he failed.

### A. Timeliness

The passage of time weighs heavily against reopening. The longer a party waits to file a motion to reopen a closed bankruptcy case, the more compelling the reason to reopen must be. *In re Case*, 937 F.2d 1014, 1018 (5th Cir. 1991) (citing *Reid v. Richardson*, 304 F.2d 351, 355 (4th Cir. 1962)). In assessing whether a motion is timely, courts may consider the lack of diligence of the party seeking to reopen and the prejudice to the nonmoving party caused by the delay. *In re Frontier Enters., Inc.*, 70 B.R. 356, 359 (Bankr. C.D. Ill. 1987).

While the passage of time in itself does not constitute prejudice to the opposing party, a delay may be prejudicial when combined with other factors such as court costs and attorney's fees in state-court foreclosure proceedings. *Bianucci*, 4 F.3d at 528-29. We held in *Bianucci* that a two-year delay that caused the creditor to incur costs in state-court foreclosure proceedings was a sufficient basis to deny reopening. *Id.* In *Bianucci* the debtor filed the motion to reopen two years after the case had been closed and five months after he became aware of the creditor's lien on his property. *Id.* at 529.

As the bankruptcy court noted here, Redmond's delay "dwarfs" the two-year delay in *Bianucci*. Redmond received the payoff letters at the root of this dispute in 1998, and he proceeded to litigate the matter for seven years in state court. In 2005, three weeks before trial in state court and four years after the case had been closed, Redmond finally moved to reopen his bankruptcy case. The timing of the motion strongly suggests that it was

a stalling tactic to delay the state-court foreclosure proceeding. By 2005 the judge who had presided over the bankruptcy case had retired, and the records had been archived. In the meantime Pinnacle had incurred costs in the state-court proceeding—the exact ground for prejudice in *Bianucci*.

Redmond argues that he could not have filed his motion to reopen until 2005, when Pinnacle provided him with a breakdown of the charges it was seeking in its 1998 payoff letters. But he actively disputed the charges as long ago as 1998, and nothing prevented him from bringing the matter to the attention of the bankruptcy court at that time. We have rejected the notion that "anyone who has been a debtor in bankruptcy has eternal access to federal court for all disputes related in some way to the debts handled in the bankruptcy proceeding." *Zurn*, 290 F.3d at 864. The bankruptcy court did not abuse its discretion in rejecting the motion to reopen as untimely.

## B. Facial Validity of Redmond's Bankruptcy Claims

The motion's lack of timeliness was one of three reasons given by the bankruptcy judge for denying the motion to reopen. The judge also held that Redmond's arguments had no substantive merit. Redmond contended that Pinnacle's actions in the state-court foreclosure suit violated various bankruptcy-court orders. The bankruptcy judge held that Pinnacle's actions—issuing payoff letters and initiating a foreclosure proceeding after Redmond had defaulted and the auto-

matic stay had been lifted—were not attempts to collect in violation of the bankruptcy stay or other orders. We agree.

As an initial matter, we cannot accept Redmond's contention that the bankruptcy court disregarded the district court's remand instructions. In the remand order, the district judge took issue with the bankruptcy court's distinction between a lien placed on real, as opposed to personal, property because both types of liens could violate the terms of a bankruptcy plan. The district court directed the bankruptcy judge to "d[i]g deeper," take into account "all relevant factors," and make "all necessary inquiries" into whether Redmond had cause to reopen his bankruptcy case. As a general matter, the bankruptcy judge was free to base his postremand ruling on factors relevant to but not specifically addressed in the remand order, *see United States v. Morris*, 259 F.3d 894, 898 (7th Cir. 2001), and here the district court expressly directed the bankruptcy judge to do so.

And the bankruptcy judge did exactly what he was instructed to do: He considered all relevant factors in determining whether to reopen Redmond's case. The judge issued a lengthy opinion in which he analyzed in detail whether Pinnacle had violated the automatic stay, the Agreed Order, the Chapter 13 plan, or the discharge injunction. Specifically, the bankruptcy court held that Pinnacle had not sought to collect prepetition debt in violation of the bankruptcy plan by issuing the payoff letters. This is the exact issue Redmond claims the judge failed to decide earlier.

Redmond also ignores the fact that when the case returned to the district court after remand, the district court affirmed the denial of reopening. We have held that a district court is "clearly in the best position to know the scope of its own remand order," and its affirmance of the bankruptcy court's ruling indicates that its concerns were adequately addressed. *Ingersoll*, 562 F.3d at 864. Tellingly, Redmond quotes at length from the district court's remand order, but disregards the affirmance after remand.

As for Redmond's specific allegations of error, we agree with the district court that none have merit. He argues that Pinnacle's inclusion of certain prepetition debts in the payoff letters violated (1) the automatic stay, (2) the Agreed Order, (3) the Chapter 13 plan, and (4) the bankruptcy discharge. We take each of these arguments in turn, beginning with the automatic stay.

The bankruptcy court properly concluded that the payoff letters did not violate the automatic-stay provision of § 362(a) of the Bankruptcy Code. 11 U.S.C. § 362(a). Section 362(a) prohibits collection activities in violation of the stay, such as attempting to convert an unsecured prepetition claim into a secured claim, attempting to obtain possession of property of the Chapter 13 estate, or attempting to perfect a lien against property of the estate. *See Mann v. Chase Manhattan Mortg. Corp.*, 316 F.3d 1, 3-4 (1st Cir. 2003) (citing 11 U.S.C. § 362(a)).

Payoff letters, however, are not acts of collection and therefore do not constitute violations of the automatic stay. As the bankruptcy judge explained, the payoff letters were "simply statements of the bank's

position as to what was owed" issued in response to Redmond's demand. Banks furnish payoff letters at the debtor's request to help the debtor prepare to pay off a loan. To hold that a payoff letter violates an automatic stay would be preposterous; it would enable debtors to draw banks into violations of bankruptcy law merely by requesting a statement of what they owed.

Moreover, the language of Pinnacle's payoff letters confirms the finding that they were not attempts to collect. The March 19, 1998 letter, for example, explains that it is a "statement of the amount required to be paid off on April 1, 1998" (the date the balloon payment was due). The amounts given in the letter are "subject to a final confirmation," and the itemization of charges clearly indicates the "Total Amount [is] Due on April 1, 1998."[6]

Redmond relies on *In re Sullivan*, 367 B.R. 54 (Bankr. N.D.N.Y. 2007), but that case is distinguishable and in any event contrary to the weight of authority.[7]

---

[6] Redmond suggests that *inaccurate* payoff letters constitute violations of the automatic stay. This argument is unavailing. Section 362(a) makes no distinction between collection activities based on the accuracy of the amount claimed. 11 U.S.C. § 362(a).

[7] Other courts have held that payoff letters are not attempts at collection and do not violate automatic stays. *See In re Saylor*, No. 3:07-cv-229-WKW, 2008 WL 2397344, at *5 (M.D. Ala. June 9, 2008) (creditor had not "acted" for purposes of § 362(a) by sending a "transaction history report" and payoff letter at

(continued...)

Unlike the present case, *Sullivan* involved additional creditor conduct that clearly violated the automatic stay. That is, the creditor in *Sullivan* did more than just issue a payoff letter; it also prevented the sale of the debtor's property by withholding an abstract of title until the debtor had paid the debt. *Id.* at 63-65. Further, the automatic stay in *Sullivan* had not yet been lifted and therefore the creditor's subsequent collection activities violated an ongoing stay. By contrast, the automatic stay in this case had terminated at the time the balloon payment went unpaid, and therefore Pinnacle could initiate the state-court foreclosure suit without violating it.[8]

---

[7] (...continued)
debtor's request (citing *In re Redmond*, 380 B.R. 179, 187 (Bankr. N.D. Ill 2007))); *Sullivan v. First Horizon Home Loan*, No. 02-10657, 2003 Bankr. LEXIS 2091, at *2 (Bankr. E.D. Pa. Nov. 23, 2003) ("Neither the internal posting of fees to an account, nor their inclusion on a payoff statement implicate the automatic stay because neither is an act or effort to collect the fees."). In a related context, courts have held that merely recording an amount owed in a creditor's internal bookkeeping does not violate the automatic stay. *See Mann v. Chase Manhattan Mortg. Corp.*, 316 F.3d 1, 3-4 (1st Cir. 2003) (holding that absent an overt attempt to recover, the creditor's internal bookkeeping does not violate the automatic stay); *In re Sims*, 278 B.R. 457, 471 (Bankr. E.D. Tenn. 2002) (same). These holdings reinforce the conclusion that payoff letters based on the amounts reflected in these records, when not accompanied by affirmative steps to collect, do not violate the automatic stay.

[8] The *Sullivan* court's holding may also have been influenced by the fact that the creditors conceded at an evidentiary
(continued...)

We also conclude that the bankruptcy judge did not abuse his discretion in rejecting Redmond's claim that Pinnacle violated the Agreed Order. The bankruptcy judge found that Pinnacle could not have violated the Agreed Order because the order "did not require the bank to do or refrain from doing anything that affected Redmond." The Agreed Order simply (1) reinstated the automatic stay, (2) froze the first foreclosure proceeding, and (3) permitted Redmond to pay off his mortgage on or before the balloon payment date. Because the payoff letters did not constitute collection activity in violation of the stay, they cannot have violated the Agreed Order either. Furthermore, the payoff letters were issued at Redmond's request and had no relation to the frozen foreclosure proceedings. Finally, the payoff letters in no way prevented Redmond from paying his claim, so they were fully consistent with the Agreed Order's provision requiring Redmond to pay his mortgage on or before the balloon payment date. When Pinnacle ultimately filed its second foreclosure suit in state court, Redmond had already defaulted for a second time and the automatic stay had been lifted pursuant to the terms of the Agreed Order. Therefore, neither the payoff letters nor the foreclosure suit could have violated the Agreed Order.

---

[8] (...continued)

hearing that the payoff letter was a "request" for legal fees. *In re Sullivan*, 367 B.R. 54, 62 (Bankr. N.D.N.Y. 2007). Pinnacle did not make a similar concession.

Redmond does not appear to have a valid claim that Pinnacle violated the Chapter 13 plan. He contends that the payoff letters improperly included payments that were to be made under the bankruptcy plan and that in effect Pinnacle was seeking to collect that amount twice—once from Redmond and a second time from the Chapter 13 trustee. The payoff letters, however, reflected Redmond's outstanding debt without regard to how that balance was to be paid. The inclusion of unpaid plan amounts in the payoff letters was not an attempt to collect those amounts twice because it was not an attempt to collect in the first place. In addition, the bankruptcy judge noted that if Redmond had paid the plan amounts as part of his balloon payment, the plan could have been modified to extinguish further payments. It also makes sense that the payoff letters would reflect the entire debt, including that owed under the plan, because according to Redmond, he needed to know the outstanding balance in order to refinance the mortgage.

Redmond relies heavily on the holding in *In re Barton* that collection of a debt in excess of the amount allowed in a Chapter 13 plan may form a basis for bankruptcy sanctions. 359 B.R. 681 (Bankr. N.D. Ill. 2006). *Barton* is inapposite, however. It involved neither a motion to reopen nor payoff letters solicited by the debtor; instead, the creditor in that case refused to accept the Chapter 13 trustee's payments of real-estate taxes under the confirmed plan and subsequently attempted to collect those taxes plus interest outside of the bankruptcy case. *Id.* at 683-84. Pinnacle, by contrast, did not

refuse to accept Redmond's payments under the plan and then turn around to collect the full debt, plus interest, via a state-court foreclosure after the plan had been discharged. Rather, Redmond defaulted by failing to pay his mortgage under the plan, which resulted in the lifting of the automatic stay. Once the stay was lifted, Pinnacle proceeded against him in state court on the default. *Barton*'s holding regarding bankruptcy sanctions for debt collection outside of a bankruptcy plan therefore has no relevance to this case.

Finally, we agree with the bankruptcy judge's conclusion that Pinnacle did not violate the discharge injunction. The judge rejected this contention for two reasons. First, Redmond's debt to Pinnacle was never discharged because he defaulted by failing to make the balloon payment in accordance with the Agreed Order. Second, as the bankruptcy judge explained, even if there had been a discharge under § 524(a) of the Bankruptcy Code, the discharge "could never have affected the bank's right to foreclose on its lien." The judge noted that a § 524(a) discharge only affects personal judgments against the debtor, not in rem foreclosure proceedings. Since the lien was neither avoided under another provision of the Code nor paid in full, Pinnacle was entitled to recover its property in a foreclosure proceeding regardless of whether the debt had been discharged under the plan.

As the bankruptcy judge held, a closed bankrupty proceeding should not be reopened "where it appears that to do so would be futile and a waste of judicial re-

sources." *In re Carberry*, 186 B.R. 401, 402 (Bankr. E.D. Va. 1995)); *see Antonious*, 373 B.R. at 406 (bankruptcy court may deny motion to reopen where it is clear at the outset the debtor would not be entitled to relief); *Arleaux v. Arleaux*, 210 B.R. 148, 149 (B.A.P. 8th Cir. 1997) (motion to reopen denied on ground that it would provide no relief to the debtor). That was certainly the case here.

## C. Availability of State-Court Forum

As if more were needed, the bankruptcy judge properly held that the state-court forum was appropriate to litigate Redmond's potential claims. The amount needed to cure a mortgage default is a question of state law; § 1322(e) of the Bankruptcy Code expressly provides that the amount necessary to cure a default is determined "in accordance with the underlying agreement and applicable nonbankruptcy law." 11 U.S.C. § 1322(e). The state court could therefore adequately entertain Redmond's challenges to the amounts Pinnacle was claiming.

Redmond argues that he could not bring his claims in state court because bankruptcy courts have exclusive jurisdiction over sanctions under § 362(h) of the Bankruptcy Code. *Id.* § 362(h). This argument is meritless. For the reasons we have explained, Redmond has no basis for sanctions under bankruptcy law.

AFFIRMED.