In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-2800

IN RE: UAL CORPORATION, et al.,

*Debtors.*

JEFFREY GLEN BROWN,

*Plaintiff-Appellant,*

*v.*

UAL CORPORATION,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 13 cv 2385—**Ronald A. Guzmán**, *Judge.*

ARGUED DECEMBER 15, 2015 — DECIDED DECEMBER 31, 2015

Before BAUER, POSNER, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* Jeffrey Brown, a former flight attendant for United Airlines, appeals from a district court decision upholding the bankruptcy court's denial of his motion to reopen the company's Chapter 11 bankruptcy, which was closed in 2009. Brown wanted the bankruptcy case reopened so that he could pursue pre-petition state-law claims of employment discrimination arising from his discharge in

2001. The district court agreed with the bankruptcy judge that Brown's years of inaction had amounted to an abandonment of those claims. We affirm. The bankruptcy court did not abuse its discretion by denying Brown's motion to reopen.

Brown worked as a flight attendant for United from 1991 until he was fired in 2001. He suffered from depression and undiagnosed bipolar disorder, which worsened in 1995 and led to discipline for repeated absenteeism and unprofessionalism. By October 2000 his condition had deteriorated to the point that he required psychiatric hospitalization. Although his newly diagnosed bipolar disorder had stabilized with treatment, United still fired him based on his prior misconduct. Brown, through counsel, contested that discharge to the United Airlines Flight Attendants System Board of Adjustment, an arbitration panel comprised of two representatives from the union, two from United, and a neutral chair. In December 2003 the Board of Adjustment ruled that Brown's bipolar disorder mitigated the seriousness of his misconduct and directed that he be permitted to return to work provided, among other conditions, that his treating physician and a doctor for United could agree that he was medically fit. Brown never complied, though, with the Board of Adjustment's requirement that he submit to a medical examination, so United did not reinstate him. In March 2005, the Board of Adjustment unanimously affirmed United's decision.

Meanwhile, UAL Corporation and more than two dozen subsidiaries had filed for Chapter 11 bankruptcy in the Northern District of Illinois in December 2002. In May 2003, a week before the deadline for creditors to submit claims,

Brown filed a proof of claim seeking almost $80,000 in back pay. Then in March 2004, the attorney representing Brown before the Board of Adjustment also sued United on behalf of Brown in a California state court. That lawsuit claimed violations of California laws prohibiting workplace discrimination on the basis of disability and sexual orientation, as well as retaliation and termination of employment in violation of California public policy. Brown alleged that these state-law violations began in 1995 and continued into 2004. He asked for $500,000 in lost wages and benefits, plus unspecified amounts for emotional distress and punitive damages. Although the airline deemed the filing of the state-court lawsuit to be a violation of the automatic stay in the bankruptcy case, see 11 U.S.C. § 362, the company opted to remove the suit to the bankruptcy court for the Central District of California and asked not for dismissal but for transfer to the bankruptcy court in Illinois.

In response to the removal, Brown's lawyer asked the bankruptcy court for the Northern District of Illinois to modify the automatic stay so that Brown could litigate his state-law claims against United in the California state courts. The bankruptcy court denied that request in June 2004, reasoning that Brown's state lawsuit alleged pre-petition claims that had to be resolved through the bankruptcy case. The bankruptcy judge did modify the stay, however, so that the then-pending arbitration proceedings before the Board of Adjustment could continue to a conclusion. For the next 18 months after that ruling, Brown's lawyer did nothing more to pursue the case in California or Illinois, even though United's motion to transfer the lawsuit to Illinois was sitting dormant in the bankruptcy court in California. Finally, in January 2006, the bankruptcy court in California granted

United's motion to transfer Brown's lawsuit, which that court characterized as an adversary proceeding, to the Northern District of Illinois.

During all of this time, the Chapter 11 case also had proceeded without Brown's participation. Brown had never filed, before the May 2003 deadline, a new or amended proof of claim identifying specifically his state-law claims or his demands for more than $500,000. Neither did his lawyer, who entered his appearance in the Chicago bankruptcy court in June 2004, object to United's plan of reorganization. That plan was confirmed in January 2006, just three days after Brown's lawsuit had been transferred from the bankruptcy court in California to the Northern District of Illinois. The plan discharged "all Proofs of Claim filed by Union-represented employees pertaining to rights collectively bargained for," and further provided that all such disputes would be resolved in accordance with the relevant collective bargaining agreement, i.e., by arbitration before the Board of Adjustment.

In April 2006, with United's plan already confirmed, a district judge in the Northern District of Illinois entered a minute order confirming that Brown's lawsuit, which the judge designated an adversary proceeding with case number 6 C 745, had been referred automatically to the bankruptcy court for disposition. See N.D. Ill. Internal Operating Procedure 15(a). The minute entry directed that the lawsuit be "Remanded to the Bankruptcy Court as related to United Airlines Case No. 02 B 48191," which the clerk of the district court apparently understood to mean remanded back to the bankruptcy court *in California*. The clerk's office mailed the file back to that court instead of forwarding it to the bank-

ruptcy judge handling United's Chapter 11 case in the Northern District of Illinois.

None of the three courts took any further action in connection with Brown's adversary proceeding. And neither did Brown. Although the clerk of the district court in the Northern District of Illinois noted on the docket that the case file had been returned to California, Brown and his counsel of record did not call that mistake to anyone's attention.

Some four years later, after the bankruptcy closed in 2009, Brown hired a new lawyer. That attorney, says Brown, contacted United's lawyers and was told—incorrectly—that Brown's claim in the bankruptcy court had already been paid. Brown again let the matter drop. Not until another two and a half years had passed, in January 2013, did he take further action. Only then, through yet another attorney, did he move to reopen United's bankruptcy so that his claims in the March 2004 California state-court complaint could be litigated. The bankruptcy court in Northern Illinois denied that motion, reasoning that Brown had failed to prosecute his claims by ignoring them for years. The district court affirmed that decision.

On appeal Brown argues that the bankruptcy court should have reopened the Chapter 11 case, primarily because his adversary proceeding was never properly docketed in the bankruptcy court. A bankruptcy court has the power to reopen a closed bankruptcy case "to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). This court "reviews a district court's decision to affirm the decision of the bankruptcy court *de novo*, but the denial of a motion to reopen a closed bankruptcy case is reviewed for abuse of discretion." *In re Herman*, 737 F.3d 449,

452 (7th Cir. 2013); see *In re Bianucci*, 4 F.3d 526, 528 (7th Cir. 1993). Two of the nonexclusive factors that a bankruptcy court should consider in deciding whether to reopen a closed case are whether the moving party would be entitled to relief if the case were reopened and the length of time it has been closed. *Redmond v. Fifth Third Bank*, 624 F.3d 793, 798 (7th Cir. 2010).

Brown's delay in moving to reopen the airline's bankruptcy was inexcusable and precludes finding an abuse of discretion. See *Redmond*, 624 F.3d at 799; *Bianucci*, 4 F.3d at 528–29. Brown cites several decisions showing that bankruptcy courts sometimes use their discretion under § 350(b) to reopen closed cases. Such decisions do not show, however, that a bankruptcy court abuses its discretion by denying such relief. In this case, the reasons supporting the bankruptcy court's denial are plain. The court declined to reopen a complex bankruptcy a full three years after it ended, and the moving party had done nothing to protect his interests for nearly a decade. Indeed, we have upheld denials of motions to reopen in situations involving even shorter delays. See *Redmond*, 624 F.3d 793 (four years); *Bianucci*, 4 F.3d at 527–29 (two years); see also *In re Hawkins*, 727 F.2d 324, 327 (4th Cir. 1984) (eight months).

"The longer a party waits to file a motion to reopen a closed bankruptcy case, the more compelling the reason to reopen must be." *Redmond*, 624 F.3d at 799. Brown offers several excuses for his years of inaction, but only three warrant discussion. None of his excuses, even considered collectively, show that the bankruptcy court abused its discretion in refusing to reopen the Chapter 11 case.

Brown casts primary blame on the court itself for not docketing his case as an adversary proceeding. That was an unfortunate clerical error, but Brown has offered no reason for waiting so many years to tell the court of its mistake. See *In re Brach*, 195 B.R. 897, 904 (Bankr. W.D. Wis. 1995) (recognizing that even innocent party may bear burden of bankruptcy court's mistake if party had ability and incentive to notify court about mistake but failed to do so). Even if, as the parties seem to agree, Brown was unrepresented by counsel for part of the time between 2006 and 2013, the record shows that his counsel had ample opportunity and reason to monitor the status of his claims. Brown does not attempt to blame his attorneys, but even if he did that would not matter. See *Pioneer Investment Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 397 (1993).

Brown's attempt to blame United for the delay is frivolous. It is true that United removed Brown's state lawsuit to federal court in California and asked that it be transferred to Illinois. It was entitled to do so, and those steps would not have been necessary if Brown had not violated the automatic stay. The bankruptcy court for the Northern District of Illinois found that Brown's state lawsuit asserted pre-petition claims that could be pursued only in the bankruptcy court. Brown did not appeal that decision even though the bankruptcy judge specifically advised Brown's attorney of that right. See *In re James Wilson Assocs.*, 965 F.2d 160, 166 (7th Cir. 1992) (recognizing that orders denying requests to modify automatic stays are final and appealable). United cannot be faulted for trying to protect itself in bankruptcy by ensuring that Brown's state-law claims, like other claims against the company, were resolved through the Chapter 11 case.

More puzzling is Brown's assertion that United's attorney may have misled him about the status of his case. Brown hired a new attorney in 2010 to "figure out what had happen[ed] to his claims in the bankruptcy case." United's attorney allegedly informed that lawyer that a check for between 4% and 8% of the amounts claimed (presumably the $80,000 asserted in Brown's pro se proof of claim) "had been mailed to him care of his former counsel in California." Brown denies receiving a check, but he does not say whether he tried to follow-up with his former counsel about the matter. His position now appears to be that United's counsel was mistaken in reporting that Brown's claim had been paid. We assume for our purposes that that is correct, but surely Brown himself knew that United had never paid him on his claim. Even the possibility of some initial confusion on Brown's part could not explain either why he had already waited years to inquire about the adversary action or why he then waited an additional two and a half years to move to reopen the bankruptcy.

The bankruptcy court did not abuse its discretion by denying Brown's motion to reopen the UAL bankruptcy, so the judgment of the district court is AFFIRMED.